**CITY OF DALLAS et al. v. HARRIS et al.**

No. 13250.

Court of Civil Appeals of Texas. Dallas.
Nov. 14, 1941.

Rehearing Denied Dec. 19, 1941.

H. P. Kucera, City Atty., and A. J. Thuss and R. L. Dillard, Jr., Asst. City Attys., all of Dallas, for appellants.

Andrew J. Priest, Frank Ivey, and Max R. Rosenfield, all of Dallas, for appellees.

BOND, Chief Justice.

The Council of the City of Dallas passed an ordinance regulating and controlling the operations of wrecker cars or vehicles upon the streets of the City. The ordinance is fashioned to prevent confusion and traffic congestion which endanger public safety, health and property of the City. The preamble of the ordinance recites many dangerous incidents occurring on the streets, due to wrecker cars or vehicles and the owners thereof, their agents and employes, racing to scenes of wrecks; and, while at such wrecks, greatly hindering the City authorities in clearing wreckage from the streets and administering medical aid to persons injured in such wrecks.

The ordinance is quite lengthy and it would serve no useful purpose here to recite its terms in haec verba: The first section defines words and terms employed in other sections; the succeeding five sections deal

with the owners of wrecker cars and vehicles, their agents, servants and employes, prohibiting them from following any city ambulance, police car or police wrecker traveling in response to city radio calls of automobile collisions or accidents, and is designed to prevent them from parking their motor vehicles, used for towing or removing disabled or wrecked motor vehicles from the streets of the City of Dallas, at or near the scene of an automobile accident; and prohibiting them from soliciting the business of towing, removing, repairing, wrecking, storing or purchasing such wrecked or disabled motor vehicles at or near scenes of wrecks, or on the streets or sidewalks of the City. The succeeding sections of the ordinance deal with the duties of owners and drivers of wrecked or disabled automobiles, and of the city police department in removing and impounding, for inspection, evidence, and public safety, such motor vehicles, and in imposing a charge of $3 against the owner or owners thereof, for towing and removing the wrecked or disabled automobiles from the street.

Appellee C. W. Harris and seven others, operating wrecker cars or vehicles in connection with their general automobile garage businesses in the City of Dallas, were, by a district court of Dallas County, granted a temporary injunction against appellants, restraining the enforcement of the ordinance, on the ground that it is unreasonable, unnecessary, discriminatory, and an unlawful exercise of power by the City Council; and that same is, in all its terms, violative of Art. 1, § 19, Bill of Rights, of the Constitution of Texas, Vernon's Ann. St. which reads as follows: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."; therefore, as held by the trial court, wholly void.

■ The ordinance manifestly seeks to regulate, on the streets, traffic of the nature involved, for the convenience, necessity and protection of the public. The ordinance is, in all its provisions, wholly regulatory, and, to effectuate its intent and purposes, must be given reasonable construction. Many of the dangers sought to be avoided are listed in the preamble of the ordinance, and many more are found detrimental to the public peace, health and safety by the City Council. It is further shown by testimony that wrecking and ambulance companies, as well as other ambulance chasers, have their places of business and tow-cars equipped with radio sets capable of receiving the short wave police broadcasts, thereby intercepting the City police's radio communications relative to automobile accidents. They then cause their solicitors to race to the scene of the accident in the hope of securing the business of towing in the disabled automobiles for repairs. They solicit at the scene of the accident, and on the street and sidewalks, patronage of the persons involved; and ofttimes, encountering lively competition in securing possession of the wrecked automobiles, engage in breaches of the peace among themselves, thereby, in many instances, interfering with police investigation in obtaining information concerning the cause of and blame for the wreck. It also came to the notice of the City Council that wrecker operators make a practice of racing to scenes of accidents, in order to be there first to solicit the business; and, in racing, the drivers and operators invariably violate the traffic ordinances of the City and greatly interfere with and obstruct traffic, both en route and upon arrival at the scene of the wreck.

■ The primary complaint in this lawsuit is not that the facts disclose no urgent necessity for the ordinance in question, but appellees confine their challenge to the power of the City to prohibit wrecker car owners from going to the scene of an automobile accident, unsolicited by the parties involved, and carrying on a solicitation of business on the streets of the City. It will be seen that the ordinance does not interfere with operators of garages conducting business in a manner not inimical to the general welfare of the City. It is only when their practices offend against the public peace, safety and welfare that the ordinance attempts to regulate. Streets of a city, like highways, are public property, to be used primarily for private purposes, and the governing body having jurisdiction may prohibit the use of the streets or highways for profit or for any unusual or exceptional use.

In Stephenson v. Binford, 287 U.S. 251, 256, 53 S.Ct. 181, 184, 77 L.Ed. 288, 87 A.L. R. 721, a truck line challenged an Act of the Legislature regulating the business of transporting freight by motor lines over the highways. The Act was sustained by the Supreme Court, saying: "It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes;

and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit." (Citing authorities.) In West v. City of Waco, 115 Tex. 472, 294 S.W. 832, 833, the Supreme Court of Texas upheld an ordinance which prohibited the parking of vehicles for hire upon any public square in the City of Waco, saying: "The highways of the state, including streets of cities, belong to the state, and the state has full control and authority over them. They 'are the property of and for the use of the state, which, through its Legislature, has absolute control over same, which control it may or may not, from time to time, delegate to the local authorities.'" In City of Waco v. O'Neal, Tex.Civ.App., 33 S.W.2d 205, 207, writ refused, the court said: "In this state it is now the established law that a municipality has the inherent power and right to prohibit by ordinance the barter and sale of all kinds of merchandise on its public square or streets." (Citing authorities.) In Dallas Taxicab Co. v. City of Dallas, Tex.Civ.App., 68 S.W.2d 359, an ordinance regulating the operation of taxicabs was held by this Court, not in violation of any Constitutional right of the operators of taxicabs. Cities are guardians of the public rights in the streets; they hold title for the benefit of the public; and they have plenary power to control the use of streets and may not only regulate, but may prohibit the prosecution of private businesses on streets. In Fletcher v. Bordelon, Tex.Civ.App., 56 S.W.2d 313, 317, the court had under consideration an ordinance regulating the use by hacks and carriages, of the streets of the City of Beaumont; the ordinance was upheld, the court saying: "No one has the inherent right to carry on his private business upon the public streets. It is not only the right, but the imperative duty, of the city to make and enforce such regulations covering the use of its streets, improved at large cost for the benefit of the public, as will be for the convenience and protection of the public." (Citing numerous authorities.) In Yellow Cab Transit Co. v. Tuck, Tex.Civ.App., 115 S.W.2d 455, this Court held an ordinance valid which regulated the loads of trucks transported over the streets of Sherman, holding in effect, that cities have as great power over their streets, alleys and public places, so far as relates to their use by vehicles, as has the Legislature over the highways of the State outside the limits of such cities and towns. So, we think, it can safely be said that the governing body of a city can absolutely control the use of its streets, public square, parks, and other public property, and absolutely prevent same from being used by any citizen or class of citizens for the conduct of any kind of private business. If cities do not have power to exclude merchants, trucksters or street venders, or any other class of citizens seeking to use public streets or public places in which to conduct their businesses, as appellees seek to do here, then no class could be excluded and streets and public places would become marts and their use for the purposes intended would be destroyed.

■ Appellees admit in pleadings and proof that the conduct of their garage business depends almost entirely upon use of the streets for the purposes of solicitation, advertisement, and consummation of transactions for the towing and repairing of wrecked automobiles; such being true, appellees' use of the streets for such purposes may be prohibited by the City.

■ The ordinance provides that the police department shall either impound all automobiles involved in collisions, for the purpose of inspection, evidence and public safety, or shall tow the same to a place designated by the driver, where such driver is unable to operate the vehicle, or the automobile is so badly damaged that it cannot be driven; and provides further that only the City's wrecker shall tow such wrecked automobiles from the scene of a collision. Art. 1175, Vernon's Ann.Civ.St., enumerates the powers of home rule cities, such as Dallas, and expressly states that such enumeration shall not prohibit the exercise of any other power. Sec. 16 of the Act provides that such cities shall "have exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards * * *." Sec. 20 gives such cities the power "to license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or like vehicles * * *." Indeed, cities have the right to exercise all powers incident to the enjoyment of local self-government not inhibited by the Constitution and laws of this State; under such grants, it cannot be said that the ordinance involved here, prohibiting private garage owners from towing wrecked cars and clearing wreckage off the streets, and bestowing such duties upon the City's police department, is an arbitrary exercise of power, or

discriminatory in favor of a City garage. We see nothing in the ordinance violative of any legal rights of appellees. It is not in contravention of the Constitution of the United States or the Constitution and laws of Texas.

The trial court erred in granting the temporary injunction, holding the ordinance void ab initio. It therefore follows that the judgment of the trial court should be reversed and judgment here rendered, dissolving the temporary injunction; it is so ordered.

Reversed and rendered.