## LIEGL v. CITY OF SAN ANTONIO et al.
### No. 11786.

Court of Civil Appeals of Texas.
San Antonio.
Dec. 10, 1947.

Rehearing Denied Jan. 7, 1948.

Conger, Baskin & Casseb, of San Antonio, for appellant.

T. D. Cobbs, Jr., William C. Davis, and Hugh R. Robertson, all of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by Jack Liegl, d/b/a Legal Paint and Body Shop, against the City of San Antonio, its Mayor and Commissioners, seeking an injunction directing the defendants to desist and refrain from in any manner attempting to enforce the provisions of an agreement entered into on July 3, 1947, between Raymond South, Police Commissioner, and Fred Palmer, Chief of Police, and various wrecker operators, one of which is plaintiff, known as the "rotation agreement," and from attempting in any manner whatsoever to enforce the provisions of the ordinance known as the "Wrecker Ordinance," passed by the City of San Antonio on February 26, 1942, or from in any manner interfering with the plaintiff in the legal operation of his business of repairing, rebuilding and refinishing of automobiles and other motor vehicles which includes wrecker service.

The trial court rendered judgment enjoining the defendants from enforcing, in any wise whatever, the so-called "Rotation Agreement" and sustaining a plea of want of jurisdiction as to plaintiff's cause of action relating to the "Wrecker Ordinance."

Jack Liegl, d/b/a Legal Paint and Body Shop, has prosecuted this appeal.

The pertinent portions of the "Wrecker Ordinance," the provisions of which were sought to be enforced, are as follows:

"Section 2: It shall hereafter be unlawful for any person to follow in a motor vehicle any ambulance, police car or police wrecker which is traveling in response to a report of an automobile collision or accident.

"Section 3: It shall hereafter be unlawful for any person to drive any motor vehicle, which motor vehicle is used for the purpose of towing or removing disabled or wrecked motor vehicles, vehicles, trailers, or semi-trailers, or both, to or near the scene or situs of an accident or collision on the streets of the City.

"Section 4: It shall be hereafter unlawful for any person to in any manner solicit on the streets of the City the business of towing any wrecked or disabled motor vehicle, vehicle, trailer or semi-trailer, or both, which solicitation is for the purpose of soliciting the business of towing, removing, repairing, wrecking, storing, or trading said wrecked or disabled motor vehicle, vehicle, trailer, semi-trailer, or both, or for the purpose of purchasing said wrecked or disabled motor vehicle, vehicle, trailer or semi-trailer, or both. Proof of the presence of any auto-wrecker or motor vehicle owned or operated by any person engaged in the business of towing, removing, repairing, wrecking, storing, trading or purchasing, either as owner, operator, lessee, employee, solicitor or agent, on any public street, in the City, at or near the scene or situs of a wreck, accident or collision within one (1) hour after the happening of a wreck, accident, or collision, shall be prima facie evidence of a violation of this section.

"Section 5: It shall be unlawful for any person to solicit any business which deals directly or indirectly with the removal, storage, wrecking, repairing, trading, or purchase of any wrecked or disabled motor vehicle, vehicle, trailer or semi-trailer, or both, on the streets or sidewalks of the City; and it shall be unlawful for any person to solicit the business of towing, removing, repairing, storing, wrecking, buying, or offering to buy, such wrecked or disabled motor vehicle, vehicle, trailer, semi-trailer, or both, on the streets, sidewalks, or any public place in the City, by handing out any advertisements, advertising any repair shop, garage, or place of business where such wrecked, or disabled motor vehicle, vehicle, trailer, or semi-trailer, or both, may be repaired, stored, wrecked traded or purchased. Proof of the presence of any person engaged in the business of towing, repairing, wrecking, storing or offering to purchase or trade for such wrecked or disabled motor vehicle, vehicle, trailer, or semi-trailer, or both, at or near the scene or situs of the accident or collision shall be prima facie of solicitation in violation of this Section.

"Section 6. That no person shall intercept any message emanating through the medium of the San Antonio Radio Station KGZE and divulge or publish the existence, contents, substance, purpose, effect or meaning of such intercepted communication, and no person not being entitled thereto shall receive or assist in receiving any such message and use the same, or any information therein contained, for his own benefit or for the benefit of another person.

"Section 7. That it shall be the duty of the Police Department to impound for the purpose of inspection, evidence and public safety, any motor vehicle demolished or disabled and involved in a wreck or collision on the streets of the City which is unable to proceed safely under its own power, or when the occupants or owners are unable or fail to have said motor vehicle removed, and it shall then be towed by the Police to the City Pound, or other space, under the control of the City, where it shall be kept until released by the written order of the owner, and for which service the Police Department shall demand and be paid, before releasing the car, the sum of Three ($3.00), for which a receipt shall be given, and which money shall be deposited by the said officer making the collection with the License and Dues Collector of the City within twelve (12) hours after such collection. The City shall have a lien for the towage fee upon the automobile or vehicle so towed, which lien shall be prior and superior to all other liens of every kind and description, save and except liens for ad valorem taxes.

"Section 8. The License and Dues Collector of the City shall have the power to issue permits to auto-wrecker operators as herein provided. * * * ,

"Section 13. It shall be a violation of this ordinance for any licensed auto-wrecker operator to have in his place of business, or for any auto-wrecker to be equipped with, any radio set capable of receiving any broadcasts on the frequency of 2482 kilocycles. * * *

"Section 18. Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not to exceed $200.00, and each day such violation continues, shall constitute a separate offense."

■ An ordinance similar to the one here under consideration was passed upon and declared to be constitutional and valid in City of Dallas v. Harris, Tex.Civ.App., 157 S.W.2d 710. Writ of error refused by the Supreme Court. For the reasons stated in this case, we hold that the ordinance complained of was and is constitutional and valid.

■ Courts of equity will not restrain the enforcement of a penal ordinance unless it is first shown to be absolutely void and, secondly, that irreparable injury would be done to vested property rights. State ex rel. McNamara v. Clark, 79 Tex.Cr. 559, 187 S.W. 760; City of Graham v. Seal, Tex.Civ.App., 235 S.W. 668.

■■ Appellant did not have a vested right to use the streets of San Antonio for the purpose of carrying on his wrecker business and therefore no vested property right of his has been injured or destroyed. Peters v. City of San Antonio, Tex.Civ. App., 195 S.W. 989; Greene v. City of San Antonio, Tex.Civ.App., 178 S.W. 6; City of San Antonio v. Fetzer, Tex.Civ.App., 241 S.W. 1034.

■ Appellant contends that the ordinance is vague and indefinite and is therefore void and unenforceable. The construction of penal laws and ordinances is a matter within the jurisdiction of courts given criminal jurisdiction. Flowers v. Woodruff, Tex.Civ.App., 200 S.W.2d 178.

In Kemp Hotel Operating Co. v. City of Wichita Falls, 141 Tex. 90, 170 S.W.2d 217, 219, it is said:

"As a general rule, courts of equity will not enjoin a criminal proceeding. It is the function of courts of law created for the purpose of trying criminal cases to pass upon the validity of criminal statutes or ordinances."

See also: Salinas v. Moore, Tex.Civ. App., 201 S.W.2d 68; Greiner-Kelley Drug Co. v. Truett, 97 Tex. 377, 79 S.W. 4.

The trial court properly refused to grant the injunction prayed for by appellant and accordingly the judgment is affirmed.