CITY OF CHATTANOOGA *v.* FANBURG.

(*Knoxville,* September Term, 1953.)

Opinion filed February 11, 1954.

J. W. ANDERSON, of Chattanooga, for plaintiff in error.

ANDREW A. WASSICK and WALTER O'MILLINUK, both of Chattanooga, for defendant in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This lawsuit attacks the constitutionality of a wrecker or towing service ordinance passed by the City of Chattanooga. The Ordinance No. 4072 is copied in full in the footnote.[1] The trial judge held the Ordinance void as

1. "Ordinance No. 4072

"An Ordinance Regulating and Licensing Wrecker Or Towing Service: Providing For the Revocation Of Licenses, And Providing Penalties For The Violation Of Its Provisions.

"Be It Ordained By The Board Of Commissioners Of The City Of Chattanooga, Tennessee:

"Section 1. Definition. For the purpose of this Ordinance a wrecker or towing operator shall be deemed to be any person, firm or corporation engaged in the business of offering towing service by use of a wrecker or by an automobile adapted to that purpose, said service being the towing or otherwise removing disabled motor vehicles from the place where they had been disabled.

"Storage, for the purpose of this Ordinance consists of storing a motor vehicle within a building being used by the towing operator as his place of business.

"Section 2. No wrecker or towing operator shall engage in the business within the City Limits or offer such service to any motor vehicle upon the streets of the City of Chattanooga unless a license is obtained from the City Treasurer for each wrecker or towing car operated by said wrecker or towing operator.

being obnoxious to Article XI, Sec. 8 of the Constitution, which prohibits the passage of "any law for the benefit of individuals inconsistent with the general laws of the land", etc.; and as prohibited by Section 8 of Article I, as not being "due process of law", or "the law of

"Section 3. The Commissioner of the Department of Fire and Police shall promulgate a complete set of Rules and Regulations describing in detail the procedure to be observed by any such Licensee, such Rules and Regulations to be submitted to the Board of Commissioners for approval and, if approved, shall become binding upon the Licensee. The Commissioner of the Department of Fire and Police shall have authority to change such Rules and Regulations whenever, in his judgment, the interest of the City require such change or revision, such change or revision to be submitted to and approved by the Board of Commissioners before becoming effective.

"Section 4. That the maximum charges for wrecker, towing and road service within the Corporate Limits of the City of Chattanooga shall be as follows:

| Miles Away | Service Calls | Flat Tow | Crane Tow | Crane And Dolly Tow |
|---|---|---|---|---|
| 1 | $2.00 | $2.50 | $5.00 | $10.00 |
| 2 | 2.50 | 3.00 | 6.00 | 11.00 |
| 3 | 3.00 | 3.50 | 7.00 | 12.00 |
| 4 | 3.50 | 4.00 | 8.00 | 13.00 |
| 5 | 4.00 | 4.50 | 9.00 | 14.00 |
| 6 | 4.50 | 5.00 | 10.00 | 15.00 |
| 7 | 5.00 | 5.50 | 11.00 | 16.00 |
| 8 | 5.50 | 6.00 | 12.00 | 17.00 |
| 9 | 6.00 | 6.50 | 13.00 | 18.00 |
| 10 | 6.50 | 7.00 | 14.00 | 19.00 |

"Charges for crane time for removing cars which are off of the road $8.00 per hour, such charge to be made from the time the operator begins to remove the vehicle until it is on the road.

"For storage of vehicles in any building of the operator, $1.00 for twenty-four (24) hours, or fraction thereof.

"There shall be no charge for making bids or estimates to repair a vehicle.

"Section 5. Any person, firm or corporation desiring to obtain a towing license shall file with the Commissioner of the Department of Fire and Police an application setting out, among other things, the following:

"1. Name and address of person, firm or corporation desiring license;

"2. The location, description and hourly availability of wreckers owned or operated by the applicant.

"3. A statement setting forth and describing available space for properly accommodating and protecting all disabled motor vehicles to be towed or otherwise removed from the place where they had been disabled.

"4. The number of wreckers or towing cars owned or available for use by applicant.

"5. A statement that applicant intends to comply with the fees and schedule of charges as herein provided and the Rules and Regu-

the land.'' And likewise as offensive to the 14th Amendment to the Constitution of the United States. The city has seasonably perfected an appeal. We now have the matter for determination.

---

lations to be promulgated by the Commissioner of the Department of Fire and Police.

"6. That applicant is in position to and will provide twenty-four hour service, including holidays, and that he will have at all times a minimum to two (2) wreckers or towing cars and two (2) men on duty or available at all times in any 24-hour period.

"7. That all wreckers or towing cars will be fully equipped at all times with emergency equipment, such as flags, flares, axes, shovels, fire extinguisher and brooms.

"Section 6. The Commissioner of the Department of Fire and Police shall investigate or cause to be investigated each applicant for the purpose of determining whether or not the applicant has the necessary facilities to qualify as a wrecker or towing car operator, and if the applicant is qualified to recommend to the Board of Commissioners that a license be issued to the applicant.

"Section 7. When an application has been approved the City Treasurer shall grant a towing license to the applicant upon the payment by the applicant of an annual license fee. The annual license fee shall be $5.00 for each towing car or wrecker unless application is made after July 1st, in which event it shall be $2.50 for the remaining period of the year. All licenses shall expire on December 31st, and shall be renewed between December 1st and December 31st of each year.

"Before the City Treasurer shall issue any license the applicant shall deposit with the City Treasurer a certificate of an Underwriter that applicant has in force a policy or policies of insurance issued by an insurance company authorized to transact business in the State of Tennessee, as follows:

"A garage-keeper's legal liability policy covering fire, theft, explosion and collision in the following amounts:

"Fire, Theft and Explosion all in the minimum amount of $10,-000.00; Collision, subject to $100.00 deduction, with each accident being a separate claim.

"A garage liability policy covering the operation of applicant's own business, equipment or vehicles, for bodily injuries in the amount of $25,000.00 for any one person killed or injured, and $50,000.00 for more than one person injured or killed in any one accident; $5,000.00 for all damage arising, injury to or destruction of property.

"The policy or policies must contain an endorsement providing for ten (10) days' notice to the City of Chattanooga in event of any material change or cancellation of the policy or policies.

"Section 8. Whenever the City Treasurer shall issue a license under the provisions of this Ordinance he shall furnish the Licensee with a sticker having printed thereon the year for which the license has been taken out.

"Section 9. Every person, firm or corporation receiving a license pursuant to Section 8 hereof shall be issued a license sticker which shall at all times be prominently displayed on the windshield of each wrecker or automobile used for towing purposes.

"Section 10. The owner or operator of a towing car or wrecker shall have inscribed on each side thereof, in letters not less than

The case was tried on agreed stipulation of facts wherein it was agreed that the Ordinance in question was in full force and effect and that the defendant violated Sections 2 and 13 of said Ordinance in that he did not apply for and obtain a license or permit as required by the provi-

---

three (3) inches in height, the name and address of the Licensee.

"Section 11. The owner of a wrecker or towing car shall have prepared billheads with his name and the address of his place of business printed thereon. The operator of a towing car before towing a disabled vehicle away shall prepare a bill on this billhead form in triplicate, the original of which shall be given to the owner of the disabled vehicle or his authorized representative. One copy shall be sent to the Chief of Police, and the other copy retained by the owner of the wrecker or towing car. This bill shall contain the following information:

"(a) Name and address of person engaging towing car.

"(b) State license number of disabled vehicle.

"(c) Total amount to be charged for towing.

"(d) Storage rates per day, or parts thereof.

"(e) The duplicate copy of the bill shall be retained by the wrecker or towing car owner for a period of six (6) months, and shall be exhibited upon demand of the Commissioner of Fire and Police or his duly authorized representative, or any person who removes the towed disabled vehicle from the original towing car owner's place of business to another place.

"Section 12. The wrecker or towing operator shall pull the wrecked vehicle to any place designated by the owner of such wrecked vehicle. It shall be unlawful for the owner of a wrecker, his agent, employee or representative, at the scene of any accident to high-pressure or otherwise coerce or insist upon any owner of a wrecked vehicle to sign a work order or agreement at the scene of the accident for any repairs to be made on such wrecked vehicle.

"Section 13. It shall be unlawful for the owner of any wrecker or towing car to go to any place where an accident has occurred unless called by the owner or his authorized representative or by the Police Dispatcher. It shall be unlawful for the owner of any wrecker or towing car to go to the place of a wreck by reason of information received by short wave or Police radio.

"Section 14. It shall be unlawful for any City employee to solicit business for any wrecker or towing car operator, and any employee guilty of violating the provisions of this Ordinance shall forfeit his or her right to continue as such employee, and shall be subject to discharge.

"Section 15. It shall be unlawful to drive along any street or bridge and solicit towing work. Solicitation of towing work by the operator or other occupant of a licensed towing car while parked on any street or bridge is also prohibited. A towing car operator shall not proceed to the scene of a disabled motor vehicle without having been requested or notified to do so, as provided in Section 13 hereof. Responding to a call upon notice from gas station attendants, taxicab drivers, or unauthorized persons shall be considered a violation of this Ordinance.

sions of the Ordinance and that he did, on or about September 18, 1952, take his wrecker or towing car from his place of business on McAllie Avenue along and over the streets of the City of Chattanooga to a wreck on Riverside Drive without having been called by the owner or the owner's agent or the police dispatcher.

"Section 16. The Commissioner of the Department of Fire and Police shall revoke the license of any Licensee on any of the following grounds:

"(1) If said license was procured by fraudulent conduct or false statement of a material fact or that a fact concerning applicant was not disclosed at the time of his making application that would have constituted just cause for refusing to issue said license.

"(2) If the Licensee proceeds to the scene of the accident in violation of the provisions of this Ordinance.

"(3) If the Licensee uses a short wave or Police radio to obtain information as to location of the scene of the accident.

"(4) If the Licensee shall pay in the form of a gratuity any person not involved in the accident for information as to the location of the accident.

"(5) If the Licensee has violated the fee schedule by overcharge or has violated any of the Rules and Regulations established by the Commissioner of the Department of Fire and Police.

"(6) If the Licensee has been guilty of the violation of the provisions of this Ordinance for the third time.

"Such revocation shall terminate all authority and permission heretofore granted by said license to the Licensee. Any person, firm or corporation whose license has been revoked shall not be eligible to again apply for a license for a period of one (1) year from the date of such revocation.

"Any person, firm or corporation whose license has been revoked by the Commissioner may file an appeal therefrom to the Board of Commissioners within twenty (20) days from date of revocation. The Board of Commissioners shall have authority upon the hearing of said appeal to reverse, vacate or modify said Order of revocation.

Section 17. Any person, firm or corporation violating any of the provisions of this Ordinance or who shall engage in business as a wrecker or towing car operator without a license as herein provided, shall be guilty of a misdemeanor, punishable by a fine of $50.00, and each violation shall constitute a separate offense.

"Section 18. If any Section, paragraph, clause or sentence of this Ordinance shall be held invalid by a Court of competent jurisdiction, such holding shall not affect the remaining Sections, paragraphs, clauses and sentences.

"Section 19. That this Ordinance take effect two weeks from and after its passage the public welfare requiring it.

"Passed third and final reading August 19, 1952.

"P. R. Olgiati
Mayor.

"W. R. Hyatt
 Commissioner."

 The Charter of the City of Chattanooga is found in Chapter 536 of the Private Acts of 1949 and under Subsection 16 thereof it is provided that:

"To license, tax and regulate taxicabs, automobiles for hire, trucks and buses; to fix a rate to be charged for the carriage of persons and property by any vehicle held out to the public use for hire within the City; to require indemnity bonds, issued by surety companies or indemnity insurance policies to be filed with the City by the owner or operator of any such vehicle * * *."

This authority is given to the Board of Commissioners of Chattanooga. Pursuant to that authority the Ordinance quoted below was passed. We think there can be no question but that under this provision of the Charter of the City of Chattanooga the City Commission had the authority and power if they deemed it necessary for such an Ordinance to be passed to regulate these vehicles, that is wreckers or towing vehicles on the streets of the City of Chattanooga. *Spoone* v. *Mayor & Aldermen of Town of Morristown,* 185 Tenn. 454, 206 S. W. (2d) 422; *City of Chattanooga* v. *Jackson,* 172 Tenn. 264, 111 S. W. 1026. It seems to us clear under many authorities that the business of carrying or transporting property for hire is a privilege, the licensing, regulation and control of which is a legislative prerogative. This power to regulate the roads and streets is likewise a legislative prerogative and may be delegated by the Legislature of the State to the cities who in turn may by ordinance regulate control of the use and operation of wreckers or towing cars on its streets. *City Transportation Co.* v. *Pharr,* 186 Tenn. 217, 209 S. W. (2d) 15; *Large* v. *City of Elizabethton,* 185 Tenn. 156, 203 S. W. (2d) 907; *Tennessee Coach Co.* v. *Lenoir City,* 179 Tenn. 453, 167 S. W.

234 234

(2d) 335, 337, 144 A. L. R. 1116, and other cases that might be cited.

■■ It is obvious from a consideration of the Ordinance as a whole that it was enacted by the City Fathers in the furtherance of public safety and public welfare. The provisions of the Ordinance apply to all wrecker or towing operators engaged in removing wrecks or disabled vehicles from the streets of the City of Chattanooga. It seems therefore clear that this classification is reasonable and was enacted pursuant to express legislative authority as above indicated and clearly is not violative of the constitutional sections invoked or any other sections of the Constitution that we know anything about. This power of the city exists not alone through its licensing power but also ''in the exercise of police powers, to prevent traffic congestion and the dangers incident thereto.'' *Tennessee Coach Co.* v. *Lenoir City,* supra.

In *Stephenson* v. *Binford,* 287 U. S. 251, 256, 53 S. Ct. 181, 184, 77 L. Ed. 288, 87 A. L. R. 721, a truck line challenged an Act of the Legislature regulating the business of transporting freight by motor lines over the highways. The Act was sustained by the Supreme Court of the United States, saying:

''It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit.'' (Citing authorities.)

■ The City Fathers of Chattanooga who enacted the Ordinance are presumed to be familiar with the local conditions and the necessity for the regulation of wreck-

ers and towing cars. These legislative and administrative officials of the city are the ones who receive complaints about such things and they are the ones who are in a position to know what should be done to protect the public safety. We as a Court therefore do not ordinarily, unless the Statute is plainly obnoxious to some constitutional provision, substitute our judgment for the legislative branch of the government. *Nashville, C. & St. L. R. Co.* v. *White,* 158 Tenn. 407, 413, 15 S. W. (2d) 1, affirmed by the U. S. Supreme Court, 278 U. S. 456, 49 S. Ct. 189, 73 L. Ed. 452.

 It seems to us upon a consideration of the Ordinance in its entirety that it manifestly seeks to regulate, on the streets, traffic of the nature involved, for the convenience, necessity and protection of the public. The Ordinance is, in all its provisions, wholly regulatory, and, to effectuate its intent and purposes, must be given reasonable construction. We think that many of the things that the Ordinance regulates that the Court can take judicial notice of the fact that most cities the size of Chattanooga have police or shortwave radios over which reports are made and that wrecker operators and others have receiving sets or something of the kind in their cars where they obtain information about these wrecks and immediately rush to the scene of the accident which of course in many instances might create a hazard on the public streets. This though is a matter for consideration of the City Fathers in enacting an ordinance of the kind. The Ordinance (Subsection 13) does not prohibit the operator of a wrecker or towing car from being at the scene of a wreck under any conditions. By reading the Ordinance as a whole it simply prohibits the operator of a wrecker or towing car from taking his wrecker or tow-

ing car to the scene of the wreck without being called by the owner or the owner's agent or police dispatcher. It prohibits him from going to the wreck and soliciting wrecker business. It does not prohibit the operator from going to the scene of the accident without his equipment provided he does not solicit wrecker business or interfere with the police officers in making their investigation. The contention which was made below that we have answered to our satisfaction above was likewise made in the case of *Tennessee Coach Co.* v. *Lenoir City,* supra. This Court in answer to the contention there made said:

"Considering, first, the second of the grounds relied on for the Coach Company, we do not find the ordinance to be prohibitory in the sense asserted, but regulatory only. It is true that the language is somewhat broad, in that it purports to prohibit the Coach Company, and its servants, and other motor carriers of its class, 'from loading and/or unloading passengers on or upon any of the public thoroughfares within the corporate limits,' etc., but when the object set forth in the ordinance, as being the prevention of, 'congestion of traffic and dangerous, unsafe and hazardous conditions, endangering the lives and property of other users,' of the City streets, is considered, it is apparent that it is not the purpose of the Act to prohibit altogether the taking on or off of one or more passengers, at reasonable points within the City limits. We think the language of the ordinance may and should be construed as intended to accomplish the purposes of its enactment as set forth therein. The principle of the maxim ejusdem generis, which requires that general terms be related to specific enumerations, has application."

This Court in *Large* v. *Elizabethton,* supra, held that

a municipality had the right to fix rates to be charged by taxicab operators. In *Spoone* v. *Mayor & Aldermen of Town of Morristown,* supra, we held that the city had the right to regulate the taxicabs on the street, where they should park, etc. Similar ordinances have been passed on by the courts of other jurisdictions. The author of McQuillin on Municipal Corporations in Section 24.628 3rd Edition, Vol. 7, said:

"An ordinance prohibiting private garage owners and towing agents from using the streets to solicit business and to tow and clear away wrecked automobiles, and delegating such service to a City police garage, may be held valid. Leastwise, such an ordinance is valid where it appears that private garage owners have committed many abuses detrimental to public safety with respect to the matter. A provision regulating towing cars and making it unlawful to refuse towing service is in the interest of the car owner so that he may have prompt and reasonable towing service at proper prices. However, such provision does not confer a right on the tow truck owner or operator to go where he is lawfully forbidden to enter."

Under the first sentence of the above quotation we find cited two cases from Texas, *City of Dallas* v. *Harris,* Tex. Civ. App., 157 S. W. (2d) 710, and *Liegl* v. *City of San Antonio,* Tex. Civ. App., 207 S. W. (2d) 441, upholding ordinances very similar to that involved in the instant litigation.

We have given this matter considerable thought and are constrained to uphold the validity of the ordinance as a whole and reverse the judgment below. The case will be reversed and remanded to the Criminal Court for hearing.