S & R AUTO & TRUCK SERVICE, INC., v. CITY OF CHARLOTTE, STANFORD R. BROOKSHIRE as MAYOR OF CITY OF CHARLOTTE, CLAUDE L. ALBEA, FRED D. ALEXANDER, SANDY R. JORDAN, MILTON SHORT, JOHN H. THROWER, JERRY TUTTLE AND JAMES B. WHITTINGTON, as MEMBERS OF CITY COUNCIL.

(Filed 2 November, 1966.)

**1. Appeal and Error § 49—**

Findings of fact by the trial court which are supported by competent evidence are conclusive on appeal.

**2. Municipal Corporations § 28—**

A municipal corporation is authorized to make provision for the removal of motor vehicles abandoned or disabled on its streets so as to promote the free flow of traffic, and to this end may designate towing services which will be called by its officers to render such service. G.S. 160-200(7), (10), (11), (31), (35), (43).

**3. Same—**

Where a municipality has divided the city into zones and designated a towing service to be called upon to remove abandoned or disabled vehicles within each of such zones in those instances in which the owners of such vehicles fail to designate or call upon a towing service, and the towing services selected by the city adequately meet the needs of the city, the city may refuse to "license" another service to perform such towing operations for the city without a hearing. The rule proscribing discrimination in licensing concerns offering services to the public is not applicable to the selection by the city of the concerns which it will use in the discharge of its public functions.

APPEAL by plaintiff from *Jackson, J.*, at the 14 February 1966 "B" Civil Session of MECKLENBURG.

The individual defendants are the mayor and members of the City Council of Charlotte. All defendants are hereinafter referred to as the city.

Section 20-20 of the ordinances of the City of Charlotte provides that whenever a police officer finds a motor vehicle abandoned, wrecked or unlawfully parked on the streets of the city, he shall have the vehicle removed "by a properly licensed wrecker." Sections 20-125 to 20-134, inclusive, relate to the granting of a "license" to a "wrecker," to the duties imposed upon the holder of such "license," and to the charge which may be made for his services. Section 20-135 provides that the Chief of Police shall adopt "reasonable rules and regulations for wreckers, including establishing zones for the operation of wreckers for city tow-in," which rules shall be effective upon approval by the City Council. For the purpose of all of these provisions, Section 20-125 defines a "wrecker" to be "a person engaged in a business, or offering the services of tow-in service,

whereby disabled motor vehicles are towed * * * from the place where they are disabled * * * upon call by the city * * * other than upon direction by the owner of the vehicle involved."

These ordinances provide for application for "license" to the Chief of Police, investigation by him of the applicant and of his proposed operation, a recommendation by the Chief of Police to the City Council and the issuance of a license by the Council "after approval by the Chief of Police," and after determination by the Council that "the public convenience and necessity" requires the proposed service. It is provided that the Chief of Police "shall recommend" the issuance of a license when he "finds" that required insurance policies have been procured, that the applicant and his employees are fit and proper persons, that the requirements of the Article and all other applicable laws have been met, and "that the public convenience and necessity require the wrecker service for which application has been made."

The ordinances make no provision for a hearing, and contain no standards by which the Chief of Police or the Council shall determine whether the "public convenience and necessity" requires the proposed service.

In this action, the plaintiff seeks a writ of *mandamus* requiring the city to issue to it a "license for wrecker and tow service." The complaint alleges that the plaintiff applied to the city for a license, that its application was denied, and that the denial was arbitrary, capricious and unreasonable, the last allegation being denied by the city.

By consent the matter was heard by the judge without a jury. Evidence was offered by the plaintiff. The city offered none. The trial judge made numerous findings of fact and drew conclusions of law, upon the basis of which he adjudged that the plaintiff is not entitled to the issuance of a writ of *mandamus* and dismissed the action.

Without setting forth in full the findings of fact so made, the material portions thereof may be summarized as follows:

The plaintiff has been for many years and is now engaged in a general automobile repair business. In connection therewith it has operated one or more tow-in vehicles. Prior to the adoption of the present ordinances, certain operators of tow-in vehicles, including the plaintiff, agreed with the then Chief of Police to divide the city into zones, one zone being assigned to each operator participating in the agreement. Prior to the adoption of the present ordinances, the plaintiff relinquished the zone assigned to it. Following the adoption of the present ordinances, the Chief of Police promulgated certain rules and regulations pertaining to the operation of "wreckers li-

censed." These rules are not shown to have been reduced to writing and have not been approved by the City Council. The Chief of Police has divided the city into four zones and has assigned each zone to an operator licensed under these ordinances.

When the plaintiff filed its application, it was informed by the Director of the Traffic Division of the Police Department, to whom its application was referred by the Chief of Police, that "the wrecker service now existing was working better than it ever had before and that the Police Department was satisfied with it and there wasn't any use to apply for a license." The application and the plaintiff's facilities and equipment were, however, investigated by a police officer. His report shows that the plaintiff did not at that time have in effect policies for the full amount of liability insurance required by the ordinances. However, the plaintiff stated to the officer that these would be obtained immediately upon the approval of his application. (This intent and ability appear not to be in dispute.) During the course of the investigation, the plaintiff was not requested or advised to produce and deposit with the Chief of Police any policies of insurance. The investigating officer found the plaintiff's facilities and equipment to be adequate and the employees of the plaintiff to be fit and proper persons to supply the proposed service.

The Chief of Police transmitted the report of the investigating officer to the City Council with the Chief's recommendation that the application be denied. The significant portions of the report of the Chief of Police are as follows:

> "It is the opinion of this department that should the application of S & R Auto and Truck Service, Inc., be approved it will endanger the existing operation of the four wrecker companies presently engaged in tow-in service for the City of Charlotte.
>
> "Approval of this application will necessitate awarding S & R Auto and Truck Service, Inc. a portion of the existing wrecker zones. * * *
>
> "The police department is satisfied with the four wrecker companies now operating within the city and sincerely believe that any additional companies operating will endanger the existing conditions, and will cause dissension and unrest among the four companies now licensed to operate."

Thereupon the City Council denied the application.

The service presently rendered by the four wrecker companies, now operating within their respective zones, is adequate to meet the needs and requirements of the city. There is no evidence that the service so rendered is not good or that there have been com-

plaints concerning it. There is no evidence that the actions of the defendants or of the Chief of Police were malicious, arbitrary, capricious or unreasonable.

*Clayton & London for plaintiff appellant.*
*J. W. Kiser and Paul L. Whitfield for defendant appellees.*

LAKE, J.　It is to be noted that the plaintiff is permitted by the city to carry on and does carry on, within the city, the business of towing disabled or other automobiles when requested to do so by the owners of the vehicles. We, therefore, do not have before us and we express no opinion as to the authority of a city to regulate or restrict the right to engage in such business or the charges to be made for such service. The "licensing" provisions of the ordinances now before us relate solely to towing service supplied upon the call of a police officer when the owner (or his representative) does not designate the "wrecker" to be called by the officer.

The plaintiff excepts to the court's finding that the service supplied by the four "wreckers" now "licensed" is adequate to meet the needs of the city and that there is no evidence to show that such service is not good or to show complaints with reference to it. This finding is supported by evidence in the record and is conclusive upon appeal. *Abney Mills v. Motor Transit Co.,* 268 N.C. 313, ......
S.E. 2d ......; *Stewart v. Rogers,* 260 N.C. 475, 133 S.E. 2d 155. The plaintiff's exception thereto is, therefore, not sustained.

The trial court concluded that the City Council has no authority under the ordinance to issue a "license" until the application has first been approved by the Chief of Police and that the Chief of Police has no authority to approve the application until liability insurance policies required by the ordinance have first been procured. In our opinion, this is too strict and literal a construction of the provisions of these ordinances. Clearly, they require that the specified insurance contracts be in effect prior to the issuance of the "license." However, the evidence shows and the court found, that upon the filing of its application the plaintiff made it clear that it was ready, able and willing to procure the requisite insurance as soon as its application was approved. This is not questioned by the city in this record. It is quite clear that the sole reason for the denial of the application was that the service rendered by the four "wreckers" previously "licensed" was adequate, and to grant an additional "license" to the plaintiff would endanger the ability of the four companies already operating to continue to supply such service upon call by a police officer.

Upon this record the plaintiff must be and is deemed by us to

have adequate facilities and equipment, together with competent, trustworthy personnel, and to be ready, able and willing to supply prompt, efficient and reliable tow-in service for disabled automobiles within the area it proposes to serve.

The plaintiff is not seeking to compel the issuance to it of a license to do business with the public. That which is called a "license" in the ordinance, and by the plaintiff in this action, is not a permit to do business with whomsoever may seek or accept the licensee's services. It is simply a designation by the city of the "licensee" as the towing service operator to be called by the city's own police officer when the owner of the disabled vehicle cannot or does not select a towing service operator. It is nothing more than a determination by the city that the person or firm so designated is the person or firm it will employ to remove a vehicle from its street.

By statute all incorporated cities and towns of this State are empowered:

> "To pass such ordinances as are expedient for maintaining and promoting the peace, good government, and welfare of the city, * * * and for the performance of all municipal functions."
>
> "To make and enforce local police * * * regulations."
>
> "To * * * adopt such ordinances for the regulation and use of the streets * * * as it may deem best for the public welfare of the city."
>
> "To provide for the regulation, diversion and limitation of * * * vehicular traffic upon public streets."
>
> "To license and regulate all vehicles operated for hire in the city."
>
> "To * * * provide by ordinance that whenever any motor vehicle is abandoned upon the public streets * * * such vehicle may be removed * * * by or under the direction of a police officer * * *."

G.S. 160-200 (7), (10), (11), (31), (35), and (43). Unquestionably, a city may make provision for the removal of motor vehicles abandoned or disabled in its streets so as to promote the free flow of traffic therein. McQuillan, Municipal Corporations, 3rd Ed., §§ 24.618 and 24.628.

The record shows that each year approximately 8,000 automobile accidents occur on the streets of the City of Charlotte. It is a matter of common knowledge that a large number of the vehicles involved in these accidents are damaged to such an extent that they cannot be moved from the scene under their own power. In many instances, the owner or driver of the damaged automobile is a stranger

in the city or is injured so that he cannot promptly select and obtain the services of an operator of a tow-in vehicle. In all such cases, it is necessary that the vehicle be moved promptly from the street to an appropriate place for the safekeeping of the vehicle and its contents until the owner is in a position to make necessary arrangements for the care of his property. When the owner or driver of the disabled vehicle cannot or does not select a towing service, the city police must do so in order to facilitate the safe and ready flow of traffic along the city's streets. The police officer called to the scene of the accident must be able to obtain prompt towing service by one to whose care and custody the automobile and its contents may be entrusted. Such service must be available to the police officers at all hours and its availability must be assured for the future.

A city may, if it so desires, acquire and operate its own tow-in vehicles. In such case, it may direct its police officers to call city owned tow-in vehicles exclusively, where, as here, the owner of the disabled automobile makes no selection himself, and it may, in the interest of safety, forbid privately owned tow-in vehicles to go to the scene of an accident without first having been called by the owner of a disabled vehicle or by the police. *Hempstead T-W Corp. v. Town of Hempstead,* 13 Misc. 2d 1054, 177 N.Y.S. 2d 445; *Chattanooga v. Fanburg,* 196 Tenn. 226, 265 S.W. 2d 15, 42 A.L.R. 2d 1200; *Liegl v. San Antonio* (Tex. Civ. App.), 207 S.W. 2d 441; *City of Dallas v. Harris* (Tex. Civ. App.), 157 S.W. 2d 710.

In lieu of using its own vehicles for this purpose, a city may instruct its police officers to call a privately owned towing service. It may, no doubt, leave the selection of such service to the discretion of the officer at the scene of the accident, but the chaotic and dangerous conditions which may develop around the scene of an accident when the city elects to proceed in this matter are well portrayed in the opinions of the New York and Texas courts above cited. It is surely not unreasonable for the city to elect to relieve the officer investigating the accident from this further harrassment by designating the towing service which he is to call in all such cases.

In regulating the use of its streets for the conduct of its business, and in the issuance of true licenses permitting the holder to transact business thereon, it is well settled that a city may not discriminate between persons similarly situated in the absence of express statutory authority to do so. See *Suddreth v. Charlotte,* 223 N.C. 630, 27 S.E. 2d 650. This rule, however, has no application where the city is not issuing a true license but is merely selecting the person who is to be called upon by the city's own representative to render a service to the city; that is, to do an act which the city itself must do if it cannot obtain a satisfactory performance of it by another. It

is immaterial whether the service is to be paid for by the city or by some individual for whose benefit the city has the act done. In either event, where the city has an interest of its own in the performance of the service, the city may select the person who is to render the service. It is not required to parcel out such business among all who are ready, able and willing to perform such service adequately and thus spread its calls for assistance so thinly that it is not profitable for anyone to remain ready and able to respond. Indeed, this record shows that the plaintiff gave up its participation in the plan formerly in operation because the city did just that.

Thus, it is not unreasonable for the City of Charlotte to provide that a "license" shall not be issued for the service here in question unless the "public convenience and necessity" requires the service proposed by the applicant. In the absence of any indication to the contrary, this term, as used in the ordinance, must be held to have the same meaning as it has in the regulation of public utilities under Chapter 62 of the General Statutes. So interpreted, public convenience and necessity does not require a new supplier of a service in a field in which the existing suppliers are rendering adequate service which will be jeopardized by an additional competitor.

It does not follow, however, that the procedural requirements of Chapter 62 of the General Statutes for a determination of public convenience and necessity must be read into the ordinance here in question. This ordinance does not require the City Council to conduct a hearing in order to determine whether the public convenience and necessity requires the proposed service of the plaintiff.

We need not and do not now pass upon the question of what kind of a hearing, if any, must be held by a city in passing upon an application for a license or franchise to serve the public within the city. We hold only that there is no requirement that the city hold a hearing to determine that the city, in its corporate capacity, is now receiving adequate service from "wreckers" with whom it has made arrangements to respond to calls by its police officers and that it is not in the public interest to use the plaintiff's services. The Chief of Police and the City Council may reach such conclusion solely upon the experience and wisdom of the Chief and his staff if he and the Council so elect. If that decision be deemed to result in undue preference, the remedy is at the polls, not in the courts.

We have examined each of the plaintiff's assignments of error and we find therein no basis for disturbing the judgment rendered below. The court properly denied the writ of *mandamus* requested by the plaintiff.

Affirmed.