LEE HUTCHINS v. WILENA GOODSON HONEYCUTT

No. 80

(Filed 30 December 1974)

**1. Specific Performance; Vendor and Purchaser § 5— contract to convey land — specific performance**

A binding contract to convey land, when there has been no fraud or mistake or undue influence or oppression, will be specifically enforced.

**2. Specific Performance; Vendor and Purchaser § 5— specific performance of contract**

Specific performance of a contract is generally decreed only when it is equitable to do so; accordingly, a plaintiff cannot obtain specific performance when a contract is unfairly procured by overreaching on plaintiff's part, or is induced or procured by means of oppression, extortion, threats or illegal promises on his part, even though these matters are not of such character as would justify a court of equity in rescinding the contract or a court of law in refusing relief.

**3. Specific Performance; Vendor and Purchaser § 5— contract to sell land — overreaching by buyer — insufficiency of evidence**

The evidence was insufficient to support a finding that defendant's contract to convey her land was procured by unfair and overreaching conduct on plaintiff's part, and the court erred in denying specific performance of the contract, where the evidence tended to show that plaintiff knew defendant's husband was an invalid and that defendant had recently been treated for cancer but that neither her treatment for cancer nor any other physical or mental infirmity played a part in her execution of the contract, the evidence showed that defendant's brother took part in the negotiations for sale of the property but there was no evidence that her brother acted in bad faith and against her best interest, there was no contention or evidence that the purchase price agreed upon was not fair and reasonable, and

the totality of the evidence suggests that defendant changed her mind when she discovered her husband did not want her to sell the land.

Chief Justice BOBBITT not sitting.

Justices SHARP and BRANCH concur in result.

APPEAL by defendant from decision of the Court of Appeals, 22 N.C. App. 527, 207 S.E. 2d 333 (1974), reversing order by *Martin (Harry C.), J.,* 4 June 1973 Schedule A Session, BUN-COMBE Superior Court.

Plaintiff brought this action to compel defendant to convey to plaintiff approximately thirty-five acres of land for $35,000.00 pursuant to a written contract executed by the parties. Plaintiff paid $100.00 down with balance due on delivery of the deed. The contract stipulated that the transaction should be closed on or before 28 April 1972. However, on 22 April 1972 defendant wrote plaintiff that her husband would not agree to the sale. She returned plaintiff's check in the amount of $100.00, uncashed, and informed him that the sale would not be made. Plaintiff thereupon brought this suit for specific performance.

The case was initially tried before Judge Martin in June 1973, and the following issues were submitted to and answered by the jury:

"FIRST: Did Wilena Goodson Honeycutt execute the paper writing set out in the Complaint?

ANSWER: Yes.

SECOND: Is $35,000.00 a reasonable and fair price for the property in question?

ANSWER: Yes.

THIRD: Did Wilena Goodson Honeycutt breach said contract?

ANSWER: Yes.

FOURTH: Is the plaintiff, ready, able and willing to carry out his part of said contract?

ANSWER: Yes."

Notwithstanding the verdict, Judge Martin refused to enter judgment decreeing specific performance but entered the following order instead:

"THIS CAUSE coming on before the undersigned Judge after the returning of the verdict of the jury and upon

the tendering by the plaintiff of Judgment requesting spe-
cific performance of the contract referred to in the plead-
ings, and, after considering the record proper and the
testimony of the witnesses and verdict of the jury, the Court
finds the following facts:

That the defendant inherited most of the property
which is the subject of this lawsuit from her family, and
that her husband purchased some additional acres and had
them conveyed to the defendant; that her husband paid the
taxes on the property. That, in December of 1971, the plain-
tiff [sic] had a serious operation for cancer, and, during
January and February of 1972, took treatment of cobalt
for this condition;

That the property referred to was the old Home Place
of the defendant, and she has two children, one being a
son. That, during March of 1972, the plaintiff entered into
negotiations with the defendant's brother concerning the
purchase of the property in question. That he did not talk
with the defendant until he had made some tentative agree-
ment with the brother, Bill Goodson; that the defendant
was called to come to the home of her brother, at which
time she was told concerning the agreement to sell the
property; that she was told to go to the office of Attorney
Floyd Brock for the purpose of executing a contract for
the sale of the property;

That the plaintiff had known the defendant for some
time; that he knew that she was married and that her hus-
band was an invalid; that he had heard that she had suf-
fered from cancer and had been under a physical and mental
strain;

That he knew that the property was part of the old
Goodson Home Place;

That the defendant went to the office of Attorney
Floyd Brock and was shown a paper in his office, but she
does not recall the contents of the paper, although she did
have an opportunity to read the paper, and she signed the
paper. That the paper was a contract in writing for the
sale of the defendant's property to the plaintiff, for a price
of $35,000;

That the plaintiff did not have any express or specific
purpose for the use of this property; that it did not adjoin

Hutchins v. Honeycutt

his property although it was in the same neighborhood; that the plaintiff was not assembling property of which the subject property was to be a part; that the record does not have any evidence to show that the plaintiff required this specific property for any particular use to which other property could not be put; that, except for its location, there is no evidence to indicate that this propery has any special value or special purposes or use to which the plaintiff had planned to utilize the property;

That, after the execution of the contract, that the defendant returned the plaintiff's $100.00 deposit and sent a letter to him stating that her husband would not agree to the sale, that he would not join in the execution of the deed, and further, that she had been under a difficult physical and mental strain, and advised the plaintiff that she could not convey the property to him;

That the record does not contain any evidence that the property is worth at the time of trial any amount in excess of the $35,000 purchase price.

ON THE FOREGOING FINDINGS OF FACT, THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:

That, although the contract found by the jury is a lawful contract and the Court could not set the same aside, this Court does find that the contract was procured by overreaching the defendant at a time at which her mental and physical condition was impaired and when she was under emotional stress, and the agreement was procured with a degree of unfairness which induces this Court to withhold its aid in the specific performance of the agreement, this Court being of the opinion in the exercise of its judicial discretion, that under the rules set forth in *Knott vs. Cutler*, 224 N.C., p. 430, that equity should not be granted to the plaintiff to require the specific performance of this agreement.

Upon the foregoing findings of fact and conclusions of law, IT IS THEREFORE HEREBY ORDERED, in the exercise of the discretion of the Court, that the plaintiff's prayer for specific performance of the contract in question be, and the same is hereby denied.

---

---

IT IS FURTHER ORDERED that this cause shall be placed upon a subsequent calendar for trial before a jury upon the following issue: 'What amount is the plaintiff entitled to recover from the defendant?'

This, the 15th day of June, 1973.

/s/ Harry C. Martin
Judge Presiding"

At the trial on the issue of damages before Judge Friday and a jury at the 7 January 1974 Session, Buncombe Superior Court, the jury answered the issue "Nothing." Plaintiff, having preserved his exceptions and assignments of error with respect to the order of Judge Martin denying specific performance, appealed to the Court of Appeals. That court reversed and remanded the case to the Superior Court of Buncombe County for entry of judgment decreeing specific performance of the contract, Judge Morris dissenting. Defendant thereupon appealed to the Supreme Court pursuant to G.S. 7A-30(2). Evidentiary matters not herein set out, but pertinent to the question posed for decision, will be recited in the opinion.

*S. Thomas Walton, attorney for plaintiff appellee.*

*Morris, Golding, Blue and Phillips by William C. Morris, Jr., attorneys for defendant appellant.*

HUSKINS, Justice.

The sole question for our determination is whether, under the facts and circumstances disclosed on the record, the plaintiff is entitled to a decree of specific performance.

[1] "It is accepted doctrine that a binding contract to convey land, when there has been no fraud or mistake or undue influence or oppression, will be specifically enforced." *Combes v. Adams,* 150 N.C. 64, 63 S.E. 186 (1908); *Boles v. Caudle,* 133 N.C. 528, 45 S.E. 835 (1903); *Whitted v. Fuquay,* 127 N.C. 68, 37 S.E. 141 (1900); *see* Dobbs, Remedies § 12.10 (1973).

[2] Generally speaking, however, specific performance of a contract is decreed only when it is equitable to do so. Accordingly, a plaintiff cannot obtain specific performance when a contract is unfairly procured by overreaching on plaintiff's part, or is induced or procured by means of oppression, extortion, threats, or illegal promises on his part. *See* 71 Am. Jur. 2d,

Specific Performance, § 45 (1973). "These matters need not be of such character as would justify a court of equity in rescinding the contract or a court of law in refusing relief. There is a difference between that degree of unfairness which will induce a court of equity to interfere actively by setting aside a contract and that which will induce a court to withhold its aid. Relief may be denied upon the ground that the contract is harsh, unjust, or oppressive, regardless of any actual fraud, and regardless of the fact that the contract is valid." 71 Am. Jur. 2d, Specific Performance, § 52 (1973); *Knott v. Cutler*, 224 N.C. 427, 31 S.E. 2d 359 (1944). Even so, it is well settled that when "the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach." 4 Pomeroy, Equity Jurisprudence § 1404 (5th ed. Symons 1941); *Rudisill v. Whitener*, 146 N.C. 403, 59 S.E. 995 (1907). Thus, specific performance does not depend upon an unbridled discretion that varies with the length of the chancellor's foot but is granted or withheld according to the equities that flow from a just consideration of all the facts and circumstances of the particular case. *Byrd v. Freeman*, 252 N.C. 724, 114 S.E. 2d 715 (1960); 71 Am. Jur. 2d, Specific Performance, § 6 (1973).

Following the verdict of the jury, Judge Martin found and concluded that defendant's contract to convey was a lawful contract which "was procured by overreaching the defendant at a time at which her mental and physical condition was impaired and when she was under emotional stress, and the agreement was procured with a degree of unfairness which induces this Court to withhold its aid in the specific performance of the agreement, this Court being of the opinion, in the exercise of its judicial discretion, that under the rules set forth in *Knott v. Cutler*, 224 N.C., p. 430, that equity should not be granted to the plaintiff to require the specific performance of this agreement."

Findings of fact by the trial court, if supported by any competent evidence, are conclusive on appeal. *State v. Johnson*, 278 N.C. 126, 179 S.E. 2d 371 (1971); *Truck Co. v. Charlotte*, 268 N.C. 374, 150 S.E. 2d 743 (1966). And this is so notwithstanding evidence which would support findings to the contrary.

*Lutz v. Board of Education,* 282 N.C. 208, 192 S.E. 2d 463 (1972) ; *Equipment Co. v. Equipment Co.,* 263 N.C. 549, 140 S.E. 2d 3 (1965). Thus, if there is competent evidence to support it, we are bound by the finding that the contract to convey was procured by "overreaching the defendant" at a time when her mental and physical condition was impaired and she was under emotional stress, and was procured "with a degree of unfairness." The word "unfair" is defined as "marked by injustice, partiality or deception: UNJUST, DISHONEST." The definition of "overreach" is "to get the better of esp. by sharp, unfair, tricky, or deceitful means: OUTWIT." Webster's Third New International Dictionary (Unabr. 1964). Conceding that a contract obtained by unfairness and overreaching would be harsh, unjust or oppressive and should not be specifically enforced in equity, we now examine the evidence to determine whether it supports the findings.

Plaintiff offered in evidence the contract to convey. This instrument shows that plaintiff agreed to purchase and defendant agreed to sell the lands therein described for the sum of $35,000.00 and that plaintiff paid $100.00 earnest money upon the execution and delivery of the contract. The instrument provides that the sale should be completed on or before 28 April 1972.

Plaintiff then offered defendant's letter dated 22 April 1972, addressed to plaintiff, stating:

> "My son visited with us over the past weekend and we discussed the suggested sale to you of the old home place with my husband. He will not agree to the sale or to sign a deed out of the family.

> The physical and mental strain I have been under for the past months has been most difficult. I am returning your check, uncashed, and am informing you that the sale of this property cannot be made.

Yours very truly,
/s/ Wilena G. Honeycutt"

Plaintiff's evidence shows that, following negotiations with defendant concerning purchase of her property, he employed Attorney Floyd Brock to abstract the title and prepare the necessary legal documents. Later, he went to Brock's office and signed the contract and Mrs. Honeycutt's signature was on it at that

time. He is ready, able and willing to pay the purchase price of $35,000.00.

Attorney Floyd Brock testified that defendant came to his office on 29 March 1972 and signed the contract in his presence. Thereafter plaintiff came to his office and signed the contract on 6 April 1972. Mrs. Honeycutt had full opportunity to read the contract before signing and apparently examined it to her satisfaction.

Defendant testified that she holds a B.S. degree from Western Carolina University and has engaged in her profession as a school teacher for many years. At the time she entered into the contract in question she was employed as a teacher and has continued to be so employed to the date of the trial. On 17 December 1971 she had surgery for cancer and took twenty-five cobalt treatments, all of which had been completed before she made the contract. She inherited twenty-six acres of the property from her parents and acquired title to the remaining eleven acres by deed from her husband who had purchased it from her brother Bill Goodson. She owns the thirty-seven acres of land in her own right. She was acquainted with the defendant before the date of the contract and knew he owned a tract of land about one hundred yards from the acreage she contracted to sell.

Mrs. Honeycutt further testified that as a result of a conversation with her brother Bill Goodson she agreed to meet with plaintiff at her brother's home to discuss a sale of her property. Her brother had told her plaintiff was interested in purchasing the property but she had never discussed the matter with plaintiff prior to the meeting.

Relative to her conversation with plaintiff at her brother's home, Mrs. Honeycutt said:

"I had an occasion to see Mr. Hutchins at my brother's home in Newbridge sometime in the early part of 1972. That was about the latter part of March, I would say. I had not seen him or discussed it with him at any time prior to that a sale of my property. There was a discussion about the sale of my property at that time. My husband was not with me at the time and the reason he wasn't because he was not physically able. I happened to go to my brother's house on that occasion because I was called and asked to meet Mr. Hutchins there. My brother Bill Goodson called

me. During the discussion I had there with Mr. Hutchins, I made the statement about my husband that he would have to agree to the sale and would have to sign the deed. I do not remember Mr. Hutchins' exact words to that. He did not make any objection to that at that time."

With reference to signing the contract in Lawyer Brock's office, defendant testified:

"It was at the request of Mr. Hutchins that I went up to Mr. Brock's office. I said I would go up there. I wasn't forced to go up there. And I went up there for the purpose of signing a paper that had to do with the sale of my property for the sum of $35,000.00 and I knew that. I signed a paper but I was not given a copy. I looked at the paper but I am a school teacher, not a lawyer, so I do not understand legal terms. I did look at it enough to know that it wasn't a deed. I read some of the paper but, as I say, I am not well versed in legal terminology. I looked at the paper writing in Mr. Brock's office close enough before I signed it to see the purchase price was inserted in the blanks of $35,000.00. . . . I went up there by myself. . . . I was not coerced. I signed it of my own free will. I had an opportunity to read the document if I had wanted to before I signed it. . . . I was teaching school in March and April of 1972. My mind was not affected by the Cobalt treatments that I had previously had. If I had [sic], I would not have been working."

Mrs. Honeycutt further testified that she thereafter discussed the matter with her husband and her son after which she wrote Mr. Hutchins the letter dated 22 April 1972 informing him that sale of the property could not be made.

[3]    We are constrained to hold that the evidence is insufficient to support a finding that defendant's contract to convey her land was procured by unfair and overreaching conduct on plaintiff's part.

The jury found that the contract price of $35,000.00 was fair and reasonable and defendant has never contended otherwise. Her testimony does not indicate she was the victim of a sharp trader or was tricked into an unfair bargain. Moreover, her own testimony belies the assertion that her treatment for cancer or any other physical or mental infirmity played a part

in her execution of the contract. She does not infer, and there is no evidence to support the inference, that her brother acted in bad faith and against her best interest. The only permissible inference to be drawn from the evidence is to the contrary. In fact, the totality of the evidence suggests that defendant changed her mind when she discovered her husband did not want her to sell the land. She has assigned no other reason for her failure to abide by her contract.

It is regrettable that defendant agreed to sell her property before ascertaining her husband's wishes in the matter. Nevertheless, no fraud is involved and specific performance may not be withheld absent evidence of overreaching sufficient to invoke the judicial discretion of the court and justify the exercise of that discretion in accordance with settled principles of equity. Here, there is no such evidence of record: no fraud, no mistake, no undue influence, no harshness and no oppression. In light of those facts and circumstances, the contract is binding and will be specifically enforced. Of course, defendant's husband is under no obligation to plaintiff. The husband's rights under G.S. 29-30, and in all other respects, are not affected.

For the reasons stated the decision of the Court of Appeals, reversing the order of Judge Martin dated 15 June 1973 and remanding the case to the Superior Court of Buncombe County for entry of a decree of specific performance, is

Affirmed.

Chief Justice Bobbitt not sitting.

Justices Sharp and Branch concur in result.