MEDIAS ET AL. *v.* CITY OF INDIANAPOLIS ET AL.

[No. 27,263. Filed November 28, 1939.]

1. APPEAL—*Assignment of Errors—Cross-Errors—Necessity For.*—On plaintiff's appeal from declaratory judgment declaring certain sections of ordinance valid, that part of judgment declaring other sections thereof void was not open to review where no cross-errors had been assigned by defendants with respect thereto. p. 158.

156

*Faust, Faust, Medias & Faust,* for appellants.

*Edward H. Knight, Michael B. Reddington, Oscar C. Hagemier,* and *Arthur C. Van Duyn,* for appellees.

SHAKE, C. J.—The cities and towns act of 1905 authorizes cities to license, tax, regulate, suppress, and prohibit pawnbrokers and makes them subject to police supervision and inspection. Acts of 1905, ch. 129, §§ 53 and 164, §§ 48-1407 and 48-6110 Burns' 1933, §§ 11432 and 11482 Baldwin's 1934. Acting under this authority the common council of the city of Indianapolis, on January 4, 1926, adopted its ordinance 121, 1925, regulating pawnbrokers, the same being

§§ 615 to 625, inclusive, of the Municipal Code of Indianapolis, 1925. Section 618 of said ordinance undertook to provide that the place of business of any pawnbroker should not be kept open between 7:00 o'clock p. m. on any day and 7:00 o'clock a. m. on the day following, with certain exceptions. In 1935 the General Assembly enacted a law entitled, "An Act concerning pawnbrokers, and declaring an emergency," which became effective on May 1st of that year, being ch. 195, Acts of 1935, § 18-3201 Burns' 1939 Pocket Supp., § 13220-1 et seq. Baldwin's Supp. 1935.

Appellants began this action on August 5, 1937. The complaint was brought under the Uniform Declaratory Judgments Act (Acts 1927, ch. 81, § 3-1101 Burns' 1933, § 438 Baldwin's 1934), and alleged that § 618 of ordinance 121, 1925, was vitiated by the act of 1935 and that said action was in contravention of the State and Federal Constitutions.

On November 15, 1937, and during the pendency of this action below, the common council adopted its ordinance 75, 1937, amending §§ 618, 620, 621, 622, 624, and 625 of ordinance 121, 1925, and adding thereto a new section numbered 624½. Appellants thereupon filed a supplemental complaint, by which they attacked the validity of the ordinance, as amended, in its entirety. This appeal is from a judgment in which the court below found that §§ 618 and 624½ of said amended ordinance are null and void and that §§ 615, 616, 617, 619, 620, 621, 622, 623, 624, and 625 are each valid and effective and supplemental to the act of 1935 and not in conflict therewith. No cross-errors have been assigned with respect to §§ 618 and 624½ and that part of the judgment referring to them is not open to review. It is the contention of the appellants that the Pawnbroking Law of 1935 repealed by implication the

provisions of the cities and towns act of 1905 relating to that subject; that the sections of the amended city ordinance found valid by the trial court are in conflict with the act of 1935; and that said sections are so discriminatory, unreasonable, arbitrary, and oppressive as to deny due process.

The Pawnbroking Law of 1935 and the amended city ordinance are too lengthy to be quoted in full here. A brief summary of their contents will suffice for the purposes of this opinion. Said act of the Legislature requires every person engaging in business as a pawnbroker to be licensed by the Department of Financial Institutions. Said department is required to investigate the character, fitness, and responsibility of all applicants for a license and when such license is issued it shall authorize the holder to engage in such business, subject, however, to the right of the department to cancel the same for cause, after hearing. An annual license fee of $100 and a bond in the sum of $1,000 is required. The department is empowered to make orders, rules, regulations, and findings necessary for the proper conduct of said business, and it may examine and investigate the business, loans, books, and records of every licensee. Every pawnbroker must keep a book wherein is recorded in ink a record of each loan made by him, showing, among other things, the date of the transaction, the amount of the loan, the name and address of the pledgor, and the article pledged. Said record must also fully disclose the details of the financial transaction relating to such pledge. The pawnbroker must require the pledgor to write his name and address in said book. By regulation number 1, promulgated on October 31, 1935, every pawnbroker is also required to take a bill of sale from the seller for every article purchased in the conduct of said business, showing the

date and consideration and a description of the article purchased. Such bill of sale must be signed by the seller and disclose his address. The act regulates the rate of interest that may be charged for loans, the disposition of unredeemed pledges, and the kind of advertising that may be carried on. Pawnbrokers are prohibited from accepting pledges or purchasing articles from minors, thieves, receivers of stolen property, or persons whom they have reason to believe are such. Violation of certain sections of the act is made a misdemeanor, punishable by fine or imprisonment or both.

The sections of the amended city ordinance held valid by the trial court require every person engaged in the business of pawnbroking in the city of Indianapolis to have a license issued by the city controller, for which an annual fee of $100 is exacted. The application for a license must bear the certificate of at least three resident freeholders of the city that the applicant is a person of good moral character. The pawnbroker must keep a record showing the name, residence, age, color, height, weight, complexion, and style of beard and dress of every person making such pledge or sale. In addition, a full description of every article received in the course of such business shall be taken. The ordinance prescribes certain card forms applicable to different types of property sold or pledged to a pawnbroker. The licensee is required to enter the above data on the appropriate card and to take the signature and thumb print of the pledgor on the back thereof. All such cards must be delivered to the chief of police not later than noon on the day following any such transaction. All pledged and purchased articles must be retained by the pawnbroker for at least 96 hours from the time of reporting the transaction to the chief of police. The books and records of the pawnbroker are made subject

to reasonable inspection by police officers. It is made unlawful to accept a pledge or to receive property from an intoxicated person, as well as from a minor, thief, associate of thieves, or one known or suspected to be the receiver of stolen property. Violation of the ordinance is punishable by fine of not less than five nor more than $300, to which may be added imprisonment not exceeding 30 days.

Appellants are licensed pawnbrokers under the state law; they do not hold a city license. By their complaint they seek a judicial declaration to the effect that they are not required to have the city license to carry on their business. The propositions asserting the invalidity of the ordinance are not as succinctly stated as they might be, but we believe appellants' contentions may be fairly stated as follows: (1) that the power of the city to regulate pawnbrokers, if any such exists, must be found in some legislative grant and that, conceding that such authority existed under the cities and towns act of 1905, the same was withdrawn by the enactment of the Pawnbroking Law of 1935, since the former was impliedly repealed by the latter; (2) that by its terms the license required by the Pawnbroking Law "shall authorize the applicant to engage in the business of pawnbroking," so that the imposition of another license by the municipality is inferentially forbidden; (3) that the requirements of the ordinance in excess of those of the state law, whereby the licensee, under the former, must establish good character by the certificate of three freeholders; keep records not necessary under the latter; supply information to the chief of police; and hold purchased and pledged articles for 96 hours thereafter, etc., are in conflict with the terms of the act; and (4) that the provisions of the ordinance requiring the

licensee to take the signature and thumb print of every person who pledges or sells articles to him is arbitrary and unreasonable.

While the repeal of statutes by implication is recognized, this is not favored and that conclusion will not be indulged unless the later act is so repugnant to the earlier as to render the repugnancy or conflict between them irreconcilable. A court will always, if possible, adopt that conclusion which, under the particular circumstances in a given case, will permit both laws to stand and be operative. *Board, etc.* v. *Garty* (1903), 161 Ind. 464, 68 N. E. 1012; *Freyermuth* v. *State ex rel. Burns* (1936), 210 Ind. 235, 2 N. E. (2d) 399.

Since 1881 we have had in this state a statute which reads as follows:

> "Whenever any act is made a public offense against the state by any statute and the punishment prescribed therefor, such act shall not be made punishable by any ordinance of any incorporated city or town; and any ordinance to such effect shall be null and void, and all prosecutions for any such public offense as may be within the jurisdiction of the authorities of such incorporated cities or towns, by and before such authorities, shall be had under the state law only * * *." § 1640 Rev. St. 1881, § 9-2402 Burns' 1933, § 2087 Baldwin's 1934.

This act was held constitutional during the year of its adoption. *Jett* v. *City of Richmond* (1881), 78 Ind. 316. The Legislature must be presumed to have known these facts when the act of 1935 was passed.

The act of 1905 authorizes cities "to license, tax, regulate, suppress and prohibit * * * pawnbrokers, and to revoke any such license" and "to forbid persons engaged in any such business from purchasing or receiving any article whatever from

minors without the consent of their parents or guardians." §§ 48-1407 (37) and 48-1407 (43) Burns' 1933, §§ 11432 (37) and 11432 (43) Baldwin's 1934. Under this specific authorization §§ 623 and 624 of the ordinance prohibit pawnbrokers from receiving articles by pledge or purchase from minors, intoxicated persons, thieves, associates of thieves, or persons known or suspected of being receivers of stolen property. There can be no doubt but what these sections would come clearly within the legislative power of the city if it were not for the act of 1935. But § 35 of the act of 1935 also provides:

> "No pawnbroker shall (1) receive any pledge or purchase any article or anything from a minor; (2) receive any pledge or purchase any article from any person who is known by him to be a thief, or associate of a thief, or a receiver of stolen property, or from any person whom he has reason to suspect or believe to be any of the foregoing." § 18-3236 Burns' 1939 Pocket Supp., § 13220-36 Baldwin's Supp. 1935.

On first blush said §§ 623 and 624 of the ordinance appear to be in direct conflict with § 35 of the act, which would require us to hold that the former is invalid by the positive mandate of the act of 1881 quoted above. A further examination of the provisions of the act of 1935, however, reveals the significant fact that when said act comes to the matter of fixing penalties, no penalties are prescribed for the violation of § 35. To our mind, this can only mean one thing, namely: that the Legislature had in mind when it enacted the act of 1935 that it had already vested municipalities with the power to regulate the matters embraced in § 35 and that it did not wish to take that power away, though it did wish to give its own agency, the Department of Financial Institutions, the right to

revoke its licenses for the same reasons. Since no penalty is fixed for the violation of § 35 of the act, it does not come within the protection of the act of 1881 and there can arise no conflict of jurisdiction between the state and the municipality so far as punishment for the violation of that part of the ordinance which covers the subject-matter of § 35 of the statute is concerned.

Having the above observations in mind and taking into account the whole of the act of 1935, and the further circumstance that the General Assembly placed the administration of the act with the Department of Financial Institutions, which is the agency having jurisdiction of banks, building and loan associations, and petty money lenders, we are of the opinion that the primary purpose of the act was to bring into the control of the state the fiscal affairs of the pawnbroking business, and that it was not the intention of the Legislature to deprive municipalities of the police power granted by the act of 1905. The act of 1905 was not impliedly repealed.

It is urged that since the law provides that the state license "shall authorize the applicant to engage in the business of pawnbroking," no further or additional license requirement can be imposed by the municipality as a condition precedent to the carrying on of such an enterprise. This conclusion is reached by assuming that the requirement for a state license is made exclusive by the terms of the statute, so that the field must be deemed to be fully occupied, or, to put it another way, that the power of the city to require such a license must be deemed to have been withdrawn. A few general observations will aid us in rationalizing the situation. Provisions for licenses of the character here involved are an exercise of the police power. Such licenses are not contracts and do not create vested

interests. The sovereignty may give and the sovereignty may take away. *McKinney et al.* v. *The Town of Salem* (1881), 77 Ind. 213. The fees exacted for such licenses are not taxes. There is, therefore, nothing inherently obnoxious in the requirements that persons engaging in such business shall have two licenses, one issued by the state and another by a political subdivision or public corporation. *Sweet* v. *The City of Wabash* (1872), 41 Ind. 7; *City of Fairfield* v. *Shallenberger* (1907), 135 Iowa 615, 113 N. W. 459.

The only language in the act remotely suggesting that the state license shall be exclusive, is the clause which says that such license shall authorize the applicant to engage in the business of pawnbroking. As we construe this language, it simply means that the state has said to its licensees that they may engage in such business so far as it is concerned. By the act of 1905 cities were authorized to say substantially the same thing to their licensees.

If a city ordinance undertakes to impose regulations which are in conflict with rights granted or reserved by the Legislature, such ordinance must be held invalid. It was so decided in *Local 26, Natl. Bro. of Op. Potters* v. *City of Kokomo* (1937), 211 Ind. 72, 5 N. E. (2d) 624, 108 A. L. R. 1111. In that case the city undertook to prohibit a form of picketing specifically recognized and permitted by statute. If, however, the statute does not exclusively occupy the field, the municipality is not prohibited from imposing additional regulations if they are reasonable and within its legislative authority. This principle was clearly recognized in *Spitler* v. *Town of Munster* (1938), 214 Ind. 75, 14 N. E. (2d) 579, 115 A. L. R. 1395. That case dealt with a situation where an act provided for the licensing and regulation of

tourist camps by the State Board of Health. The town, by ordinance, imposed additional regulations in excess of but not in conflict with the statute and rules of the state board. This court held the ordinance valid.

The provisions of the ordinance before us requiring an applicant for a license to establish good character by the certificate of three freeholders, providing that the licensee shall keep certain specified records and supply information to the chief of police, and that he shall hold all purchased and pledged article for 96 hours thereafter are not directly in conflict with any provisions of the statute, though they do manifestly impose regulations in excess thereof. The question arises then, whether these regulations are arbitrary or unreasonable. On the trial of the case there was much uncontroverted evidence that thieves and receivers of stolen property frequently resort to pawnbrokers as an outlet for their ill-gotten means. These facts have also been judicially noticed by the courts. *Grand Rapids* v. *Braudy* (1895), 105 Mich. 670, 64 N. W. 29, 32 L. R. A. 116. It was further shown on the trial that where the pawnbroking business is strictly regulated larceny is greatly reduced. The conditions imposed by the ordinance would seem to have a direct relationship to the detection of crime and the apprehension of criminals, and we believe that they are reasonably calculated to accomplish that end.

Appellants say that § 620 of the amended ordinance, requiring licensees to take the thumb prints of all persons from whom they purchase or receive chattels is especially objectionable because it interferes with personal liberty. The nearest approach to an authority to sustain this contention to which our attention has been directed is the dissenting opinion in the case of *City of Wichita* v. *Wolkow* (1921),

110 Kan. 127, 202 P. 632. By strange coincidence that dissent was by the same judge who wrote the opinion for the majority. After studying the case we have concluded that the sounder views were expressed when the learned judge spoke for the court. Almost from time immemorial men have identified themselves and authenticated documents by means of their handwriting. More recently finger printing has come to be recognized as an almost infallible means of human identification. Police officials and governmental agencies utilize this system constantly in the apprehension and prosecution of criminals and in the identification of bodies. Experience has demonstrated that handwriting may be the subject of forgery, but finger prints may not. This circumstance within itself is most persuasive of the reasonableness of the requirement of the ordinance.

Judgment affirmed.