CITY OF INDIANAPOLIS, Honorable William H. Hudnut, Mayor of the City of Indianapolis, His Agents, Employees and Representatives; Sheila S. Suess, Corporation Counsel of Indianapolis, Her Deputies and Agents; Eugene Gallagher, Chief of the Indianapolis Police Department, His Police Officers and Agents; James Wells, Marion County Sheriff, His Deputies and Agents, Defendants-Appellants,

v.

CLINT'S WRECKER SERVICE, INC., an Indiana Corporation, Plaintiff-Appellee.

No. 1–780A171.

Court of Appeals of Indiana, First District.

Oct. 19, 1982.

John P. Ryan, Richard S. Ewing, James B. Burroughs, George A. Hillman, City-County Legal Div., Indianapolis, for defendants-appellants.

John R. Politan, Clark, Clark, Pappas & Quinn, Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

This is an interlocutory appeal by the Consolidated City of Indianapolis (City) from a partial summary judgment entered by the Boone Circuit Court in favor of Clint's Wrecker Service, Inc. (Clint's) in its action for injunctive relief and damages. The trial court's judgment invalidated an ordinance of the City-County Council of the City of Indianapolis and of Marion County (Council) on constitutional and other grounds, and enjoined its enforcement. The trial court reserved for later adjudication, pending resolution of this appeal, Clint's claim for damages for lost profits due to enforcement of the allegedly unconstitutional ordinance.

We reverse.

## STATEMENT OF THE FACTS

The facts are undisputed.[1] On January 1, 1977, City-County General Ordinance No. 58, 1978 (Ordinance), which amended Chapter 29, Article VI of the Code of Indianapolis and Marion County (Code), went into effect. Section 8 of the Ordinance adds a new § 29–375 to the Code, and states in part:

"(1) It shall be unlawful for any wrecker to proceed to the scene of an accident for solicitation purposes without having been summoned by either party

---

1. The trial court adopted as its Findings of Fact the agreed stipulation of facts entered by the parties.

involved in the accident or an officer at the scene of the accident. Such unauthorized response is declared a traffic hazard as harmful to the health, welfare and safety of the people of the City, and, as such, those wreckers so responding are declared public nuisances and subject to impoundment procedures, upon order of the officer at the scene of the accident."

In addition to this provision, hereinafter § 29–375(1), the Ordinance added some nine new sections to Chapter 29, Article VI of the Code, while repealing five existing sections. The subject matter of the Ordinance generally concerns procedures for removing vehicles that are determined to be traffic hazards from City streets, highways, rights-of-way, and publicly owned property. In addition to vehicles that have been involved in accidents, provision is made for removal and impoundment of stolen vehicles, improperly parked vehicles, and others. Further, procedures are prescribed for the selection of franchised wreckers and storage areas, communications systems, and other related matters. Section 12 of the Ordinance is a severability clause, and reads as follows:

"If a provision of this ordinance is held invalid, the invalidity shall not affect the other provisions or application of this ordinance which can be given effect without the invalid provision or application, and to this end, the provisions of this ordinance are declared severable."

Clint's is an Indianapolis firm engaged in the business of towing vehicles. On January 15, 1979, a Clint's employee was arrested and charged with violating § 29–375(1) for unlawfully soliciting towing work at the scene of an accident to which he had not been summoned and upon which he had happened while en route to his place of employment. The employee, Powell, radioed Clint's, notified it of the accident, and was instructed to inquire of the parties whether towing services were needed. Powell approached one of the parties, conversed with her, and handed her a business card; she instructed Powell to tow her car away. A police officer then arrived on the scene and manually indicated that Powell should leave; Powell ignored him. The officer then told Powell to leave. Powell radioed Clint's and was instructed to proceed with the tow. As Powell approached the vehicle again, the officer informed him that he would be arrested if he proceeded further. Despite the admonition, Powell continued toward the vehicle. He was arrested and his vehicle was impounded.

Clint's initiated the instant action on January 17, 1979, by filing in the Marion Circuit Court a complaint seeking a temporary restraining order, preliminary and permanent injunctive relief, and damages, contending that § 29–375(1) is unconstitutional. A temporary restraining order issued that day; following a hearing, a preliminary injunction issued January 26, 1979. The case was subsequently venued to the Boone Circuit Court, which ultimately entered partial summary judgment in favor of Clint's, declaring the Ordinance unconstitutional in its entirety, unconstitutional as applied to Clint's, and permanently enjoining its enforcement. This appeal ensued.

ISSUES

The City presents ten issues for our review which we have consolidated and rephrased as follows:

I. Whether the trial court erred in finding the Ordinance to be unconstitutional, in particular:

(A) whether the Ordinance imposes an unconstitutional infringement upon Clint's right to do business and is an invalid exercise of the City's police power;

(B) whether the Ordinance violates Clint's freedom of speech;

(C) whether the Ordinance is unconstitutionally vague and overbroad;

(D) whether the Ordinance violates equal protection;

II. Whether the trial court erred in finding the Ordinance unconstitutional as applied to Clint's;

III. Whether the Ordinance conflicts with or is preempted by state legislation;

IV. Whether the trial court erred in invalidating the entire Ordinance, whereas only one section thereof was at issue.

## DISCUSSION AND DECISION

The decretal portion of the trial court's judgment reads as follows:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. That [the Ordinance], adopted on April 24, 1978, is unconstitutional.

2. That [the Ordinance], adopted on April 24, 1978, is unconstitutional as applied to Plaintiff, Clint's Wrecker Service, Inc.

3. That the City of Indianapolis from this date forward is hereby permanently restrained and enjoined from enforcing the provisions of [the Ordinance]."

In addition, several of the court's Conclusions of Law reflect the determination that the Ordinance was found to be invalid on non-constitutional grounds. Certain of those grounds would constitute independent bases for invalidating the Ordinance, and since the City properly challenges the correctness of those conclusions, we consider the non-constitutional grounds as well, despite the fact that they are not included in the decretal portion of the judgment.

Local ordinances enacted pursuant to a proper delegation of power stand on the same footing as acts of the legislature. *Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company v. City of Hartford City,* (1908) 170 Ind. 674, 85 N.E. 362. Statutes are presumptively constitutional until clearly proven otherwise. *Moten v. State,* (1978) 269 Ind. 309, 380 N.E.2d 544. Ordinances, too, are presumptively valid. *State ex rel. Miller v. McDonald,* (1973) 260 Ind. 565, 297 N.E.2d 826; *State ex rel. McGonigle v. Madison Circuit Court, Smith, Judge,* (1963) 244 Ind. 403, 193 N.E.2d 242. The burden of overcoming the presumption is on the challenger, and all doubts are to be resolved against him. *Sidle v. Majors,* (1976) 264 Ind. 206, 341 N.E.2d 763. Ordinances, like statutes, are to be construed, if possible, so as to render them valid. *Smith v. City of New Albany,* (1910) 175 Ind. 279, 93 N.E. 73; *Schmidt v. City of Indianapolis,* (1907) 168 Ind. 631, 80 N.E. 632.

Thus, Clint's bore a heavy burden below. However, the City, as appellant, bears a considerable burden herein in demonstrating grounds warranting reversal.

"It has been held many times that all reasonable presumptions are indulged on appeal in favor of the rulings and judgments of the trial court, that the record must exhibit the errors for which the reversal is sought, and that a court of appeals will not presume anything in favor of appellant to sustain his alleged errors."

*First National Bank of Mishawaka v. Penn-Harris-Madison School Corp.,* (1970) 255 Ind. 403, 406, 265 N.E.2d 16, quoted in *Reilly v. Robertson,* (1977) 266 Ind. 29, 38, 360 N.E.2d 171. The favorable presumptions we accord the trial court's judgment, however, will not remedy any deficiencies, in the court below, in Clint's showing of unconstitutionality. *State v. Nixon,* (1979) Ind., 384 N.E.2d 152, 155.

## Issue I.  Constitutionality of Ordinance

We initially observe that in its appellee's brief Clint's argues that the Ordinance violates U.S.Const. art. I, § 10, cl. 1, which prohibits states from passing laws that impair the obligation of contracts, and U.S. Const. art. I, § 8, cl. 3, the commerce clause. Nothing in the trial court's findings of fact, conclusions of law, or judgment reflects that the court found the Ordinance to be unconstitutional on those grounds.[2] We therefore do not consider Clint's arguments concerning those allegations.

---

2. Curiously, Clint's proposed findings, conclusions, and judgment, which were adopted in toto by the trial court, do not address these allegations either. Of course, the adoption verbatim of a party's proposed findings of fact and conclusions of law does not in any way weaken them. *See, Indiana Tri-City Plaza Bowl, Inc. v. Estate of Glueck,* (1981) Ind.App., 422 N.E.2d 670, 674.

*A.* Asserting that among the unalienable rights to life, liberty, and the pursuit of happiness is the right to pursue the lawful occupation of towing vehicles upon the streets of Indianapolis, Clint's argues[3] that the prohibition against the solicitation of towing business at the scene of a vehicular accident imposed by § 29–375(1) constitutes an unreasonable and unnecessary restraint upon that right, and is not justified as an exercise of the City's police power. Clint's argues that it must be allowed to use the City's streets unfettered by governmental regulation in order to ply its trade and that the City's action in prohibiting solicitation at accident scenes effectively deprives Clint's of the pursuit of its occupation. Clint's concludes that any regulation of the manner in which it conducts its business, even undertaken to advance the public safety, welfare and morals, must yield to the constitutional right advanced.

The City, conversely, argues that the Ordinance is a reasonable regulation that serves the legitimate governmental interest of protecting the public safety and welfare, and is within the authority delegated it by the state. The City contends that the contested provision of the Ordinance, § 29–375(1), was enacted in order to alleviate dangerous conditions that can result when a number of wreckers converge upon the scene of an accident to solicit the business of towing away the disabled vehicle or vehicles involved. The practice of wreckers so responding to accident scenes is known as "accident chasing." The City argues that a reasonable method of eliminating the hazards associated with accident chasing is to restrict the number of wreckers at an accident scene to those called by the police officer in charge. The dangerous conditions sought to be remedied include: excessive congestion of the site resulting in an increased burden upon the free flow of traffic; disorderly conduct among wrecker operators competing for towing business; interference with the investigation of the accident; and interference with the well-being of accident victims.

It cannot be gainsaid that Clint's has a right to pursue its lawful occupation. Ind. Const. art. I, § 1 guarantees the "unalienable" rights to "life, liberty and the pursuit of happiness," among which, indeed, is the right here asserted by Clint's. *See, Kirtley v. State,* (1949) 227 Ind. 175, 179, 84 N.E.2d 712. We reject, however, Clint's assertion that attendant thereto is its right to conduct its business unimpeded by any regulatory control. In *Department of Insurance v. Motors Insurance Corporation,* (1956) 236 Ind. 1, 16, 138 N.E.2d 157, it is stated:

> "The right of every individual under the Indiana Constitution to engage in any lawful business cannot be prohibited unless such prohibition is grounded upon such condition existing in the business which adversely affects the public health, morals, safety or welfare.
>
> The right to pursue any proper vocation is an inalienable right, and a privilege not to be restricted except for good cause. *Weisenberger v. State* (1931), 202 Ind. 424, 428, 175 N.E. 238; *State Board of Barber Examiners v. Cloud* (1942), 220 Ind. 552, 572, 573, 44 N.E.2d 972."

Clint's contends that the Ordinance unnecessarily and unreasonably restrains its business "under the guise of" the police power. *See, Board of Zoning Appeals v. Koehler,* (1963) 244 Ind. 504, 194 N.E.2d 49. The City contends that the Ordinance is a proper exercise of the police power, which has been defined as:

> "the name given to that inherent sovereignty which it is the right and duty of the government or its agents to exercise whenever public policy in a broad sense demands, for the benefit of society at large, regulations to guard its morals, safety, health [and] order[.]"

*Chicago, Terre Haute and Southeastern Railway Company v. Anderson,* (1914) 182 Ind. 140, 143, 105 N.E. 49.

An enactment that impedes upon the rights recognized above runs afoul of Ind.Const. art I, § 1 unless it may be sustained as a proper exercise of the police

---

**3.** We have taken liberty throughout this opinion in restating Clint's arguments.

power. *Department of Insurance v. Schoonover,* (1947) 225 Ind. 187, 72 N.E.2d 747. A two-step analysis is appropriate in determining the constitutionality of the Ordinance against the permissible bounds of the police power. This test was succinctly set forth in *Crane Towing, Inc. v. Gorton,* (1977) 89 Wash.2d 161, 570 P.2d 428, 433, 97 A.L.R.3d 482, as follows:

"First, does it tend to promote the health, peace, morals, education, good order and welfare of the people? More specifically, does it tend to correct some evil or promote some interest of the state? [citations omitted] If the answer is yes, the wisdom, necessity and policy of the law are solely within the jurisdiction of the legislature. [citations omitted]

The second inquiry, more narrow, but equally important, is whether the particular statute under scrutiny bears a reasonable and substantial relation to accomplishing the purpose established in step one. [citations omitted]"

Clearly, regulation of the removal from public thoroughfares of disabled vehicles and the cleaning up of accidents is the proper concern of government, *i.e.,* the proper subject of police power, as it tends to promote the public safety. Other jurisdictions have so recognized. *See, City of Dallas v. Harris,* (1941) Tex.Civ.App., 157 S.W.2d 710; *City of Chattanooga v. Fanburg,* (1954) 196 Tenn. 226, 265 S.W.2d 15; *Vanderhoof v. District of Columbia,* (1970) D.C.App., 269 A.2d 112; *Crabtree v. City of Birmingham,* (1974) 292 Ala. 684, 299 So.2d 282. *See also,* Annot., 97 A.L.R.3d 495 (1980). The initial question in our analysis is therefore answered affirmatively.

We now consider whether the enactment has a substantial relation to the police power invoked by the City in regulating the towing of vehicles. Manifestly, a reasonable relation exists. The restriction of the number of wreckers at an accident scene to those called by the officer in charge, whether at the request of the disabled motorist or on his own, and the prohibition of solicitation at the scene are reasonable means of avoiding compounded congestion of the accident site, as well as the other hazards noted by the City which we, reflecting upon our own experience and observation, are confident exist in the absence of regulation. Clint's failed below to establish that the City exceeded its police power in enacting the Ordinance, and the trial court erred in so finding.

We make several additional observations regarding points made by Clint's in favor of the trial court's ruling.

■ Clint's asserts that, "the police power of a state, or the police power of the federal government, is much broader, and much more extensive than the police power of the City of Indianapolis." This assertion is not correct. Police power may be exercised by the subordinate government divisions, including municipalities, to which it has been delegated by the state. *See* 16 C.J.S. *Constitutional Law* § 178 (1956).

Clint's states, "the State Legislature, let alone the City-Council of the City of Indianapolis, can in no way restrict the right of a person lawfully using a public highway or thoroughfare from speaking to members of the general public in an effort to pursue his occupation." This, too, is incorrect. In *City of Chattanooga, supra,* a wrecker driver was found to be in violation of an ordinance that prohibited soliciting. The court said:

"It seems to us clear under many authorities that the business of carrying or transporting property for hire is a privilege, the licensing, regulation and control of which is a legislative prerogative. This power to regulate the roads and streets is likewise a legislative prerogative and may be delegated by the Legislature of the State to the cities who in turn may by ordinance regulate control of the use and operation of wreckers or towing cars on its streets. [citation omitted]"

265 S.W.2d at 19. Indeed, the Supreme Court of the United States, in *Stephenson v. Binford,* (1932) 287 U.S. 251, 264, 53 S.Ct. 181, 184, 77 L.Ed. 288, has observed:

"It is well established law that the highways of the state are public property; that their primary and preferred use

is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit. [citations omitted]."

*See also, Denny v. City of Muncie,* (1925) 197 Ind. 28, 149 N.E. 639; *Frick v. City of Gary,* (1922) 192 Ind. 76, 135 N.E. 346.

■ *B.* The trial court held that § 29–375(1) impermissibly infringes upon Clint's First Amendment rights of free speech and association. We cannot discern with any precision that aspect of the Ordinance found by the trial court to be offensive to free speech principles. In its argument concerning the right to pursue one's occupation, Clint's suggests that the freedoms of speech and association are "intimately intertwined" in said right. Clint's further suggests that the prohibition against solicitation burdens its right to speak to members of the public while conducting its business.

The City contends the Ordinance does not violate free speech, analyzing the issue in accordance with the principles of commercial speech. Inasmuch as the Ordinance was apparently found to restrict expression concerning purely commercial transactions, this is the proper analysis.

Commercial speech is entitled to limited protection, commensurate with its subordinate position in the scale of First Amendment values. *Ohralik v. Ohio State Bar Assn.,* (1978) 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444. Further,

"[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."

*Giboney v. Empire Storage & Ice Co.,* (1949) 336 U.S. 490, 502, 69 S.Ct. 684, 690, 93 L.Ed. 834. The state is not impotent to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity. *Ohralik, supra.* Other means are available to Clint's by which it may disseminate to the public information re-

garding its services. There is no First Amendment violation.

*C.* The trial court found the Ordinance unconstitutionally vague and overbroad. We shall consider these holdings in turn.

■ In order to satisfy due process requirements, penal statutes must be sufficiently explicit so as to adequately inform individuals of ordinary intelligence of the consequences of their contemplated conduct. *Sumpter v. State,* (1974) 261 Ind. 471, 306 N.E.2d 95, 100; *Wallman v. State,* (1981) Ind.App., 419 N.E.2d 1346. Arguing in support of the finding of vagueness, Clint's maintains that a wrecker operator must guess at how he may lawfully approach an accident, since it is unlawful "for any wrecker to proceed to the scene of an accident for solicitation purposes without having been summoned by either party involved in the accident or an officer at the scene of the accident." § 29–375(1). Clint's argues that wrecker operators might not understand the word "proceed," and, therefore, drive upon the streets at their peril lest they should happen upon an accident.

We do not find the Ordinance vague for the reasons advanced by Clint's. The Ordinance clearly defines the prohibited behavior as approaching an accident *for solicitation purposes.* The Ordinance is sufficiently explicit to apprise wrecker operators of the proscribed conduct, as well as to apprise the finder of fact the standards upon which a determination as to guilt is to be made. Difficulty in proving intent does not void a statute for vagueness. *See, Martin v. State,* (1963) 245 Ind. 224, 233, 194 N.E.2d 721.

In support of the trial court's finding of overbreadth, Clint's cites the following passage:

"The concept of overbreadth ... rests on principles of substantive due process which forbid the prohibition of certain individual freedoms. The primary issue is not reasonable notice or adequate standards, though these issues may be involved. Rather the issue is whether the

language of the statute, given its normal meaning, is so broad that its sanctions may apply to conduct protected by the Constitution. Frequently, the resolution of this issue depends upon whether the statute permits police and other officials to wield unlimited discretionary powers in its enforcement. If the scope of the power permitted these officials is so broad that the exercise of constitutionally protected conduct depends upon their own subjective views as to the propriety of the conduct, the statute is unconstitutional. [footnotes omitted]"

*Landry v. Daley*, (N.D.Ill.1968) 280 F.Supp. 938, 951–52. In particular, the trial court found the Ordinance to be so broad that it may be applied to constitutionally protected conduct, and that it permits police to wield "practically unlimited discretionary powers in its enforcement, the question of whether particular conduct is violative of the Ordinance depending entirely upon the subjective view of the police officer."

The following scenarios are suggested in which constitutionally protected behavior could be the basis for prosecution under the Ordinance as it is written: (a) a wrecker operator travels down the road in a direction that leads to an accident of which he is not aware; (b) a wrecker operator happens upon an accident of which he is not aware and is hailed by one of the parties involved. As to (a), it is asked whether the operator is "proceeding" to an accident scene under the Ordinance. This argument in support of overbreadth is not well taken in that it ignores the purposive element of the offense, solicitation. As to (b), no overbreadth is shown, as the Ordinance clearly provides for the summoning of a wrecker by a party involved in the accident. All that is prohibited, again, is the proceeding to an accident for the purpose of soliciting towing business. The Ordinance is not so broad that it may be applied to constitutionally protected conduct.

We are, further, not convinced that police are given unlimited discretionary powers in enforcing the Ordinance, as found by the court. In support of this finding, Clint's

asserts only that the Ordinance "requires police officers to be 'mind readers' in order to divine the intent of drivers who arrive at an accident scene." If we were to accept this proposition we would effectively render police officers powerless to enforce any penal law that requires a specific intent on the part of a violator. As noted in our discussion of vagueness, the difficulty in proving intent does not render a statute unconstitutional. The trial court erred in finding the Ordinance overbroad.

■ *D. The trial court found the Ordinance to violate equal protection.* The court's Conclusions of Law that relate to equal protection read as follows:

"12. That the Equal Protection Clause of the 14th Amendment to the United States Constitution provides that no state shall deny to any person within its jurisdiction the 'equal protection' of the laws and said constitutional restrictions are applicable to [the Ordinance].

\*  \*  \*  \*  \*  \*

"14. That Section 29–375(1) of [the Ordinance] violates the vagueness and overbreadth proscriptions of the 14th Amendment Equal Protection Clause of the United States Constitution.

\*  \*  \*  \*  \*  \*

"25. That Article I, Section 23 of the Constitution of the State of Indiana provides that 'the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.' That [the Ordinance] amends Chapter 29, Article VI of the [Code] in a form and manner which grants special privileges and immunities to a certain class of citizens, namely, 'authorized' wreckers, which do not apply equally to all wreckers within the City of Indianapolis, and, as such, said ordinance violates Article I, Section 23 of the Constitution of the State of Indiana."

The trial court's Conclusion of Law 14 is patently erroneous. Vagueness and overbreadth are the concerns of due process, *Landry, supra,* but not equal protection.

The rights guaranteed by the equal protection provisions of our state and federal constitutions[4] are coextensive. *Reilly v. Robertson*, (1977) 266 Ind. 29, 360 N.E.2d 171; *Cunningham v. Aluminum Company of America, Inc.,* (1981) Ind.App., 417 N.E.2d 1186. Legislative classification that results in dissimilar treatment of persons similarly situated is prohibited, unless the classification has a reasonable basis fairly and substantially related to the object of the legislation. *Board of Commissioners of the County of Howard v. Kokomo City Plan Commission,* (1975) 263 Ind. 282, 330 N.E.2d 92. This is the so-called traditional test of equal protection, which is to be applied in cases that do not involve a suspect classification or the infringement upon the exercise of a fundamental right; neither of these is involved here.

Apparently, the trial court considered constitutionally offensive the distinction drawn by the Ordinance between franchised wreckers (those having contracts with the City) and non-franchised wreckers. A franchised wrecker will be summoned by the police to to remove a vehicle if the owner cannot or does not choose to select a particular wrecker, is unavailable, or if a wrecker selected by the owner is too slow in responding; non-franchised wreckers will not be summoned by the police in those situations.

We must uphold this classification if any state of facts reasonably may be conceived to justify it. *Board of Commissioners of the County of Howard, supra.* In the court below, Clint's had the burden to negate every conceivable basis that might have supported the classification. *Reilly, supra.* However, as we noted earlier, the City, as appellant has the burden herein.

In Issue I.A., we recognized that it is a proper exercise of the City's police power to regulate accident scenes and that the prohibition against solicitation is an appropriate means of eliminating the hazards associated with accident chasing. We would add that it is clearly a proper exercise of the City's

police power to regulate the procedures for the removal of abandoned, stolen, and other vehicles found to constitute public nuisances. Clint's does not argue in its brief that the procedure whereby franchised wreckers only are called to remove disabled vehicles in the absence of the owner's intervention constitutes a denial of equal protection. Rather, Clint's first contends that the Ordinance will operate to allow franchised wreckers to solicit towing business while non-franchised wreckers are forbidden to solicit, despite the clear and unequivocal language of § 29–375(1) that prohibits "any wrecker" from proceeding to an accident scene for solicitation purposes. We recognize that Section 7 of the Ordinance[5] provides that the Chief of Police may authorize franchised wreckers to be equipped with police frequency monitor radios, but vehicles so equipped "may only use such radios to respond to direct orders from the central police dispatcher" under that section. The Ordinance may not be reasonably construed to support Clint's contention that franchised wreckers may solicit, and to the extent an equal protection violation was found by the trial court based upon such a construction, the judgment is clearly erroneous. Second, Clint's argues that towing firms located on the City's borders are somehow discriminated against by the terms of the Ordinance. Not only is Clint's presentation of this argument unintelligible, Clint's has not demonstrated that it is such a firm, or that it has standing to assert the rights of such a firm.

As to the features of the Ordinance that establish a scheme whereby police under certain circumstances summon franchised wreckers only, we perceive no denial of equal protection. Firms that obtain towing contracts with City have by the terms of the Ordinance participated in a competitive bidding procedure and have met the City's specifications concerning vehicles, equipment, storage lots, and insurance. We can easily envision situations in which the City

---

4. Ind.Const. art. I, § 23, and U.S.Const. amend. XIV, § 1, respectively.

5. Section 7 of the Ordinance adds a new § 29–374 to Chapter 29, Article VI of the Code.

might incur liability by ordering a vehicle towed away by a firm that utilizes substandard equipment, does not properly maintain its storage lot, or is inadequately insured. The procedures prescribed afford the City a measure of control over the quality of the wreckers it summons and are fairly and reasonably related to that end. We note that in *S & R Auto & Truck Service, Inc. v. City of Charlotte,* (1966) 268 N.C. 374, 150 S.E.2d 743, 748, the court upheld a similar ordinance in the face of an equal protection challenge, and stated:

> "[W]here the city has an interest of its own in the performance of the service, the city may select the person who is to render the service. It is not required to parcel out such business among all who are ready, able and willing to perform such service adequately...."

We hold that the Ordinance does not violate the equal protection provisions of our state and federal constitutions for the reasons asserted by Clint's or suggested by the trial court in its judgment.

*Issue II. Unconstitutionality of Ordinance as Applied*

█ The trial court found that the Ordinance is unconstitutional as applied to Clint's; nothing in the judgment, however, informs this court of the basis for that holding. In its brief herein, Clint's proffers no argument in support of the holding. Indeed, the only statement made by Clint's in response to the issue raised by the City is, "As was shown by the pleadings and evidence in the trial court below, the ordinance as applied to [Clint's] is unconstitutionally vague and overbroad." We have determined that the Ordinance is neither vague nor overbroad, and our examination of the pleadings and evidence below has revealed no demonstration that the Ordinance was unconstitutionally applied. Clint's has failed to demonstrate that its employee did not understand the Ordinance or that he was punished, by the enforcement of the Ordinance, for engaging in constitutionally protected conduct. Clint's does not here, and did not below, argue that the Ordinance was discriminatorily enforced against

it and as such constitutes a denial of equal protection. *See, e.g., Haas v. South Bend Community School Corp.,* (1972) 259 Ind. 515, 289 N.E.2d 495; *Owens v. State ex rel. VanNatta,* (1978) Ind.App., 382 N.E.2d 1312. No evidence was adduced that would support such a contention had it been made.

We recognized above that the favorable presumptions this court accords the judgment of the trial court do not remedy deficiencies in Clint's case below, *Nixon, supra,* and hold that Clint's failed to make a clear showing that the Ordinance was unconstitutionally applied. The trial court erred in holding that the Ordinance is unconstitutional as applied to Clint's.

*Issue III. Conflict with State Legislation*

█ The trial court held that the Ordinance is invalid because it attempts to regulate in an area preempted by the legislature in favor of the Public Service Commission (PSC), because it conflicts with the state's transportation policy, and because it conflicts with various statutes. *See, Medias v. City of Indianapolis,* (1939) 216 Ind. 155, 165, 23 N.E.2d 590, 594, wherein it is stated:

> "If a city ordinance undertakes to impose regulations which are in conflict with rights granted or reserved by the Legislature, such ordinance must be held invalid."

*Medias* was expressly overruled to the extent that it "sanctions penal ordinances which do not directly contradict a criminal statute" in *City of Indianapolis v. Sablica,* (1976) 264 Ind. 271, 342 N.E.2d 853. In *Sablica* our Supreme Court held that when the state has enacted a penal statute, a city may not enact an ordinance that "contradicts, duplicates, alters, amends, modifies or extends the subject matter of the statute," 264 Ind. at 273, 342 N.E.2d 853, as such local action constitutes a violation of Ind.Const. art. 4, §§ 22 and 23. None of the statutes found to have been conflicted with, however, are penal in nature. An impermissible conflict with state law will be found if the Ordinance seeks to prohibit that which a statute expressly permits. If the state has not chosen to occupy an area to the exclusion of municipal regulation, the City

may impose additional, reasonable regulations, and may supplement burdens imposed by non-penal state law, provided the additional burdens are logically consistent with the statutory purpose. *Board of Public Safety v. State ex rel. Benkovich,* (1979) Ind.App., 388 N.E.2d 582.

■ The trial court found that the Ordinance is in conflict with Ind.Code 18–1–1.5–19(3) (Supp.1980) (repealed) [6] which states:

"A city may not exercise the following powers:

\* \* \* \* \* \*

(3) The power to require a franchise, certificate, or permit to operate any common or contract carriers of passengers or property, operating under the jurisdiction of the public service commission of Indiana."

In the succeeding Conclusion of Law the trial court found that the Ordinance "attempts to regulate to a certain extent in an area which has been delegated to the Public Service Commission of Indiana by law." Neither the trial court nor Clint's directs us to the statutory source of the PSC's regulatory jurisdiction over the activities at issue here. The PSC is a statutory board that derives its power and authority solely from statute, and unless a grant of authority can be found in the statute, it must be concluded that there is none. *See, Illinois-Indiana Cable Television Association, Inc. v. Public Service Commission of the State of Indiana,* (1981) Ind.App., 427 N.E.2d 1100. We find no support in the record for Clint's assertion that "many firms operating wreckers within the City do so under the jurisdiction of the Public Service Commission."

The section cited not only begs the question, it is inapposite since nothing in the Ordinance requires a franchise, certificate, or permit before a wrecker may operate in Indianapolis. The City contends that even

if wreckers are regulable under the Motor Carrier Act of 1935, Ind.Code 8–2–7–1, *et seq.,* as amended, that Act clearly exempts from its purview:

"[M]otor vehicles . . . engaged in transporting property between point of origin and point of destination, both of said points being with the same city or town, and/or the suburban territory of such city or town as herein defined[.]"

Ind.Code 8–2–7–3(a).[7] Inasmuch as the City is empowered to regulate the procedures for the removal of vehicles within its territorial jurisdiction that are found to constitute public nuisances, since the Ordinance requires that the City contract with wreckers for towing services "within the police special service district" established by the City's Director of Public Safety, and since the Ordinance requires the City contract with franchised wreckers for storage lots, it follows that the points of origin and destination will be located within the City. While it is clear that the City may not regulate an activity that is within the regulatory jurisdiction of the Public Service Commission, *see, e.g., Graham Farms, Inc. v. Indianapolis Power & Light Company,* (1968) 249 Ind. 498, 233 N.E.2d 656, Clint's has failed to establish a basis for that jurisdiction here. Since we presume the validity of ordinances and uphold them in the absence of a clear showing of grounds for their invalidity, we do not consider it the task of this court to review the expansive statutory material concerning the Public Service Commission to determine if there is a basis for the preemption found by the court. We hold that the trial court erred in finding the Ordinance invalid on the basis of preemption.

■ The trial court found that the Ordinance conflicts with the state's "transporta-

---

**6.** Repealed effective September 1, 1981, by Acts 1980, P.L. 211, § 14. Section 16 of Acts 1980, P.L. 211, states:

"This act does not affect any:
(1) rights or liabilities accrued;
(2) penalties incurred;
(3) offenses committed; or
(4) proceedings begun;

before September 1, 1981. Those rights, liabilities, penalties, and proceedings continue and shall be imposed and enforced under prior statutes as if this act had not been enacted."

**7.** A 1980 amendment to § 8–2–7–3(a) does not affect the particular exemption discussed herein.

tion policy," citing the language emphasized below from Ind.Code 8–2–7–5:

> "It is hereby declared to be the policy of the legislature of Indiana to provide for fair and impartial regulation of all modes of transportation subject to the provisions of the laws of the state of Indiana, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; *to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages,* or unfair or destructive competitive practices; to make the highways safe for the general public; that the wear of such highways may be reduced; that inconvenience to other users of the highways may be minimized; *that minimum hindrance and stoppage to other users of the highways compatible with the needs of the public for adequate transportation service may be effected;* that the highways may be safeguarded from improper or unnecessary usage; that operation by irresponsible persons or any other operation threatening the safety of the public or detrimental to the general welfare be prevented; that congestion of traffic on the highway may be minimized and the public highways may serve the best interest of the general public; all to the end of developing, coordinating, and preserving a state transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the state of Indiana, and of the national defense. All of the provisions of this act shall be administered and enforced with a view to carrying out the above declaration of policy."

Neither the trial court nor Clint's specifies in what manner the Ordinance is seen to conflict with the stated policy. The court in citing the selective passages from the statute apparently considered the Ordinance to promote unjust discrimination, as well as undue preferences and advantages, presumably in favor of the franchised wreckers and to the detriment of the non-franchised wreckers that would garner towing business through solicitation. Considering the statute in its entirety, we note that the policy expressed by the legislature also embraces concerns for safety, efficiency, convenience, responsibility, and the general welfare. We recognize that a power exercised by a city must be consistent with the public policy of the state. *Local Union No. 26, National Brotherhood of Operative Potters v. City of Kokomo*, (1937) 211 Ind. 72, 80, 5 N.E.2d 624. In our view, the Ordinance is not only consistent with the policy expressed by the legislature, it supplements the policy and fosters its accomplishment as well. Further, Ind.Code 8–2–7–5 is a part of the Motor Carrier Act of 1935 and, as previously noted, no showing is made that the Act has any application here. The trial court erred in finding the Ordinance inimical to the public policy of the state.

◼ The trial court found that the Ordinance, particularly § 29–375(1) thereof, "attempts to regulate in an area which is in part subject to the provisions of [Ind.Code 9–4–1–2 (Supp.1978)]," a definitional section of the Uniform Act Regulating Traffic on Highways. The specific provision relied upon by the court, Ind.Code 9–4–1–2(d)(2) (Supp.1978)[8], defines one of three categories of "Authorized Emergency Vehicle" as:

> "Vehicles other than ambulances which are owned by persons, firms or corporations other than hospitals, and are used in emergency service, may be designated as emergency vehicles if such vehicles are authorized to operate as such by the office of traffic safety of Indiana as provided in this cause. The office of traffic safety is hereby authorized and empowered to designate and authorize the oper-

---

**8.** A 1980 amendment to subsection (d)(2) substitutes "state police department" for the "office of traffic safety." Acts 1980, P.L. 74, § 367. A 1981 amendment substitutes "department of highways" for "state police department" in the subsection. Acts 1981, P.L. 41, § 61.

ation of such other emergency vehicles pursuant to such rules and regulations as the office may prescribe."

Clint's has not demonstrated that the office of traffic safety, or any of its successors under the later amendments cited in footnote 8, has ever elected to designate wreckers as emergency vehicles or that it has ever prescribed any rules or regulations concerning wreckers. On that basis alone, the trial court erred in holding that the Ordinance conflicts with Ind.Code 9–4–1–2(d).

Moreover, it is not our understanding that the legislature intended wreckers to have the status and powers accorded authorized emergency vehicles under the Act. Various sections of the Act allow authorized emergency vehicles, in specified circumstances, various privileges[9] and impose upon the public when in the presence of such vehicles various duties.[10] These sections clearly were enacted to enable police vehicles, ambulances, and fire fighting vehicles to respond promptly to emergency situations unencumbered by the rules of the road that otherwise would apply. Thus, police officers must be able to pursue violators of the law, fire fighters must be able to proceed to fires with dispatch, and ambulances must be able to respond to emergencies and transport ill or injured persons to hospitals quickly. We further note that the legislature has indicated its intent that authorized emergency vehicles are to be given the privileges noted only when quick response is necessary. For example, Ind.Code 9–4–1–25(c) clearly withholds the privileges from emergency vehicles *returning* from a fire alarm. We do not think that the Act

evinces the legislative intent that wreckers be given those privileges.

The trial court held that the Ordinance "creates a general scheme of vehicle removal which, in many cases, would frustrate the purposes of [Ind.Code 9–4–1–113] and would run contrary to its purposes." That section states:

"(a) Whenever any police officer finds a vehicle standing upon a highway in violation of any of the provisions of this chapter, such officer is hereby authorized to require the driver or other person in charge of the vehicle to move the same, to a position off the paved or improved or main traveled part of such highway, provided that if any person so directed shall fail or refuse to move said vehicle or if such vehicle is unattended then such officer is hereby authorized to provide for the removal of such vehicle to the nearest available garage or other place of safety.

(b) Whenever any police officer finds a vehicle unattended upon any bridge or causeway or in any tunnel where such vehicle constitutes an obstruction to traffic, such officer is hereby authorized to provide for the removal of such vehicle to the nearest available garage or other place of safety."

Ind.Code 9–4–1–113 is a part of the Uniform Act Regulating Traffic on Highways, Ind.Code 9–4–1–1 through –137, as amended. With respect to the power of local authorities to adopt regulations concerning traffic, the following provisions of the Act were in effect at the time the instant action arose. Ind.Code 9–4–1–27[11] states:

"The provisions of this act shall be applicable and uniform throughout this

---

**9.** *See, e.g.,* Ind.Code 9–4–1–25(c) and (d) (Supp. 1981). Subsection (d) allows a driver of an authorized emergency vehicle to:

"1. Park or stand, irrespective of the provisions of this chapter;

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

3. Exceed the maximum speed limits so long as he does not endanger life or property;

4. Disregard regulations governing direction of movement or turning in specified directions."

**10.** *See, e.g.,* Ind.Code 9–4–1–85 (Supp.1981), and Ind.Code 9–4–1–91.2 (Supp.1981) which require, under certain circumstances, drivers and pedestrians respectively to yield the right-of-way to authorized emergency vehicles.

**11.** Ind.Code 9–4–1–27 was amended by Acts 1980, P.L. 211, § 7. *See* Ind.Code 9–4–1–27 (Supp.1981).

state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any rule or regulation and [sic] conflict with the provisions of this act unless expressly authorized herein. *Local authorities may, however, adopt additional traffic regulations with respect to streets and highways under their jurisdiction, which are not in conflict with the provisions of this act.*" (Our emphasis.)

Ind.Code 9–4–1–28(a) [12] states in part:

"(a) the provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:

    1. Regulating the standing or parking of vehicles.

    2. Regulating traffic by means of police officers or traffic control signals.

    3. Regulating or prohibiting processions or assemblages on the highways."

We do not think the Ordinance significantly conflicts with or in any way frustrates the purposes of Ind.Code 9–4–1–113. The Ordinance and the statute are each concerned with the removal of vehicles that obstruct public ways. The only contradictory provisions are that under the Ordinance, in certain situations, a police officer will order a vehicle towed to a lot maintained by a franchised wrecker or otherwise chosen by a city representative, while under the statute the police officer will order the vehicle removed to the nearest garage or other place of safety. Since the City is divided into various geographic zones which are to be recognized in the administration of the Ordinance, it appears that the designated lot may often be the nearest "place of safety." Moreover, the manner in which the City designates the lots, and the control it exercises over the specifications of those lots, removes from the officer the onus of determining the nearest garage or place of safety; the designated lot will be in the same geographic area as the location of the disabled vehicle. This supplemental burden, if indeed it is a burden at all, is logically consistent with the statutory purpose, which we discern to be the assurance that a disabled or abandoned vehicle will be towed to a location that is not an inordinate distance away. No impermissible conflict with the statute is shown, and the trial court erred in determining such to exist.

We have now completed our review of the City's issues challenging the propriety of the various grounds found by the trial court for striking down the Ordinance, and have concluded that the trial court erred in each such determination.

*Issue IV. Scope of the Judgment*

The City contends the trial court erred in fashioning its judgment so as to invalidate the Ordinance in its entirety, whereas only § 29–375(1) was at issue in this action. We need not consider this issue inasmuch as we have determined the trial court erred in finding the Ordinance invalid.

The trial court having erred in striking down the Ordinance, we hereby reverse the judgment and remand this cause to the trial court for appropriate action consistent herewith.

Reversed and remanded.

RATLIFF, P. J., concurs.

BUCHANAN, C. J. (participating by designation), concurs.

---

**12.** Ind.Code 9–4–1–28 was amended by Acts 1980, P.L. 74, § 369. *See,* Ind.Code 9–4–1–28 (Supp.1981).